# EXHIBIT 1

# Myers, Brian 12-12-2019

[Revised Objection Report]

## Colors

Plaintiff Affirmatives
Defense Objections
Defense Counters
Plaintiff Objections

| Designation | Preserved Objections | Previous Rulings | New Objections | Rulings |
|---|---|---|---|---|
| **8:21 - 10:11    Myers, Brian 12-12-2019** | | | | |
| 8 21      Q.   Good morning, sir.  For the jury, could | | | | |
| 8 22      you please state your name? | | | | |
| 8 23      A.   My name is Brian Myers. | | | | |
| 8 24      Q.   And is it correct, sir, that you are | | | | |
| 8 25      currently an employee of 3M? | | | | |
| 9 1      A.   I am. | | | | |
| 9 2      Q.   We are here today in a product liability | | | | |
| 9 3      litigation relating to a product that 3M made and sold | | | | |
| 9 4      for about 15 years. | | | | |
| 9 5      You are familiar with that product, the | | | | |
| 9 6      Combat Arms Version 2? | | | | |
| 9 7      A.   I am familiar with the Combat Arms | | | | |
| 9 8      Version 2. | | | | |
| 9 9      Q.   And if we wanted to talk to the product | | | | |
| 9 10      manager who brought that product to market, we'd be | | | | |
| 9 11      talking to the right person today, right? | | | | |
| 9 12      A.   I was a product manager in the early days | | | | |
| 9 13      of development and -- and market introduction. | | | | |
| 9 14      Q.   Okay.  And staying with my question, so | | | | |
| 9 15      the product manager that brought it to market was you, | | | | |
| 9 16      is that right? | | | | |
| 9 17      A.   I was -- I was in the role of product | | | | |
| 9 18      manager when it came to market. | | | | |
| 9 19      Q.   Okay.  And you were the product manager | | | | |
| 9 20      from when it was an idea until the time it was brought | | | | |
| 9 21      to market until what point in time, sir? | | | | |
| 9 22      A.   So I was the product manager from the | | | | |
| 9 23      time -- from the inception of it.  So I was a product | | | | |
| 9 24      manager in hearing from the -- sometime in the early | | | | |
| 9 25      '90s and this was -- I think the inception of it was | | | | |
| 10 1      '97, '98, that's when there were kind of ideas about | | | | |
| 10 2      it, and then I was the product manager responsible for | | | | |
| 10 3      the hearing protection line until 2011.  Sometime in | | | | |
| 10 4      the mid 2000s I -- I got another product manager who | | | | |
| 10 5      had, maybe, more direct responsibility for it, but... | | | | |

| | | | | |
|---|---|---|---|---|
| 10 6 | Q.   And who is that, Mr. Moses? | | | |
| 10 7 | A.   No.  Marc Santoro. | | | |
| 10 8 | Q.   Uh-huh.  And so it sounds like you -- you | | | |
| 10 9 | stopped having day-to-day responsibility or even | | | |
| 10 10 | supervisory responsibility in about 2011. | | | |
| 10 11 | Do I have that right? | | | |
| **10:14 - 10:17** | **Myers, Brian 12-12-2019** | | | |
| 10 14 | A.   I would have had maybe day-to-day | | | |
| 10 15 | interactions or -- or those responsibilities.  I -- I | | | |
| 10 16 | did -- I -- you know, Marc did work for me, so I was | | | |
| 10 17 | still his supervisor. | | | |
| **11:16 - 12:2** | **Myers, Brian 12-12-2019** | | | |
| 11 16 | Q.   Okay.  I'd like to, I guess, go through | | | |
| 11 17 | some terms with you and make sure we have some | | | |
| common | | | | |
| 11 18 | understanding throughout the day. | | | |
| 11 19 | When we talk about the Combat Arms, we're | | | |
| 11 20 | talking about -- | | | |
| 11 21 | MR. BUCHANAN:  Let's see.  Could I have P978a. | | | |
| 11 22 | We'll mark this as Exhibit 1 to your | | | |
| 11 23 | deposition, sir. | | | |
| 11 24 | (WHEREUPON, a certain document was | | | |
| 11 25 | marked Brian Myers Deposition Exhibit | | | |
| 12 1 | No. 1, for identification, as of | | | |
| 12 2 | 12/12/2019.) | | | |
| **12:9 - 12:17** | **Myers, Brian 12-12-2019** | | | |
| 12 9 | Q.   All right.  Sir, are these the Combat Arms | | | |
| 12 10 | Version 2?  Excuse me? | | | |
| 12 11 | A.   The -- this is the product that I recall | | | |
| 12 12 | as Combat Arms Version 2. | | | |
| 12 13 | Q.   This is the product you were product | | | |
| 12 14 | manager for? | | | |
| 12 15 | A.   Yes. | | | |
| 12 16 | Q.   Brought to market? | | | |
| 12 17 | A.   Yes. | | | |
| **16:1 - 16:4** | **Myers, Brian 12-12-2019** | | | |
| 16 1 | (WHEREUPON, a certain document was | | | |
| 16 2 | marked Brian Myers Deposition Exhibit | | | |

| | | | | |
|---|---|---|---|---|
| 16 3<br>16 4 | No. 2, for identification, as of<br>12/12/2019.) | | | | |
| **16:7 - 16:8** | **Myers, Brian 12-12-2019** | | | | |
| 16 7<br>16 8 | MR. BUCHANAN:  It is going to be Exhibit, I<br>think, 2, okay. | | | | |
| **16:15 - 18:1** | **Myers, Brian 12-12-2019** | **Re: [17:12-18:6]**<br>Def Objection - Prejudice (403);<br>Foundation (602); MIL 13. | | **Re: [17:7-17:9]**<br>403<br>**Re: [17:12-18:6]**<br>Baker MIL 1 | **OVERRULED** |
| 16 15 | Q.   I'll represent to you, sir, this is a 3M | | | | |
| 16 16 | video, I think it's current video of 3M. | | | | |
| 16 17 | Do you still have any responsibility for | | | | |
| 16 18 | hearing protection and safety devices at 3M? | | | | |
| 16 19 | A.   I do have some responsibilities. | | | | |
| 16 20 | Q.   And what's your title currently there, | | | | |
| 16 21 | sir? | | | | |
| 16 22 | A.   So I am a business director of hearing | | | | |
| 16 23 | protection, communications, head protection, eye | | | | |
| 16 24 | protection, face protection, some reflective materials | | | | |
| 16 25 | and body protection, which is coveralls. | | | | |
| 17 1 | Q.   Okay.  And you all put out kind of | | | | |
| 17 2 | informational videos and, you know, sometimes | | | | |
| 17 3 | generally about conditions, sometimes about safety | | | | |
| 17 4 | risks and sometimes about your products, fair? | | | | |
| 17 5 | A.   I -- I think we do produce videos from | | | | |
| 17 6 | time to time. | | | | |
| 17 7 | Q.   Okay.  But let's just roll it forward from | | | | |
| 17 8 | this point. | | | | |
| 17 9 | (Video played.) | | | | |
| 17 10 | BY MR. BUCHANAN: | | | | |
| 17 11 | Q.   Let's pause there for a moment. | | | | |
| 17 12 | You saw that, the lead-in, "What's your | | | | |
| 17 13 | favorite sounds," did you see that? | | | | |
| 17 14 | A.   The -- yeah, that was the -- the title or | | | | |
| 17 15 | the first. | | | | |
| 17 16 | Q.   There was a young child kind of, I guess, | | | | |
| 17 17 | laughing or giggling, somebody listening to music, | | | | |
| 17 18 | someone talking to a friend, so the sounds of nature | | | | |
| 17 19 | and birds. | | | | |
| 17 20 | You agree those are many of life's | | | | |
| 17 21 | pleasures, sir? | | | | |
| 17 22 | A.   Certainly being able to hear is -- is -- | | | | |

| | | | | |
|---|---|---|---|---|
| | 17 23   it provides us with -- with some pleasure in life.<br>17 24   Q.   It wouldn't surprise you, sir, if you<br>17 25   didn't have that ability, frankly, your life might be<br>18 1     a lot less enjoyable, fair? | | | |
| **18:4 - 18:6** | **Myers, Brian 12-12-2019**<br>18 4   A.   I -- I can imagine -- you know, if I<br>18 5   imagine my life without the ability to hear, it would<br>18 6   change it dramatically, I think. | **Re: [17:12-18:6]**<br>Def Objection - Prejudice (403);<br>Foundation (602); MIL 13. | | **Re: [17:12-18:6]**<br>Baker MIL 1 | **OVERRULED** |
| **18:15 - 18:21** | **Myers, Brian 12-12-2019**<br>18 15   And so in this video that includes<br>18 16   discussion of hearing protective devices, and we'll<br>18 17   see that as we get on, is it fair to say the company<br>18 18   upfront, right upfront at the beginning of it, is<br>18 19   really emphasizing how important good hearing,<br>having<br>18 20   the ability to hear voices, laughter, music,<br>18 21   conversation is to quality of life? | **Re: [18:15-19:3]**<br>Def Objection - Prejudice (403);<br>Foundation (602); Compound<br>(611, 403); MIL 13. | | **Re: [18:15-19:3]**<br>Baker MIL 1 | **OVERRULED** |
| **18:25 - 19:3** | **Myers, Brian 12-12-2019**<br>18 25   A.   So I'm not sure what the objectives of the<br>19 1   video were, and I guess we are going to see the rest<br>19 2   of it, but it does seem that what -- what they are<br>19 3   trying to say is hearing is important. | **Re: [18:15-19:3]**<br>Def Objection - Prejudice (403);<br>Foundation (602); Compound<br>(611, 403); MIL 13. | | **Re: [18:15-19:3]**<br>Baker MIL 1 | **OVERRULED** |
| **20:1 - 20:9** | **Myers, Brian 12-12-2019**<br>20 1   Q.   Okay.  And -- and, I mean, you are not<br>20 2   just a business person, right, sir?<br>20 3   A.   No.  I am a business person.<br>20 4   Q.   Well, in fact, didn't you have some fairly<br>20 5   senior roles in conservation -- hearing conservation<br>20 6   societies?<br>20 7   A.   I was a, let's see, in the National<br>20 8   Hearing Conservation Association, I was the -- I was<br>20 9   the treasurer at one point. | **Re: [20:1-20:9]**<br>Plt Objection - improper counter | **Re: [20:1-20:9]**<br>Plt Objection -<br>improper<br>counter per PTO<br>64<br>**SUSTAINED** | | |
| **23:14 - 23:19** | **Myers, Brian 12-12-2019**<br>23 14   Q.   And the screen says:  "Loud noise damages<br>23 15   the inner ear."<br>23 16   Is that your understanding, sir?<br>23 17   A.   That's what that says.<br>23 18   Q.   You agree?<br>23 19   A.   Yeah, that's my understanding. | **Re: [23:14-23:19]**<br>Def Objection - Prejudice (403);<br>Foundation (602); MIL 13. | | **Re: [23:14-23:19]**<br>Baker MIL 1 | **OVERRULED** |

| | | | | |
|---|---|---|---|---|
| **24:17 - 24:24   Myers, Brian 12-12-2019**<br>24 17    Q.   You saw those kind of hairs just kind of<br>24 18    die, did you see that picture?<br>24 19    A.   I saw that.<br>24 20    Q.   Okay.<br>24 21    A.   Yes.<br>24 22    Q.   Is that your understanding, sir, that loud<br>24 23    noise damage those hair cells and that damage is<br>24 24    permanent? | **Re: [24:17-24:19]**<br>Def Objection - Prejudice (403);<br>Foundation (602); MIL 13.<br>**Re: [24:22-24:24]**<br>Def Objection - 403; Foundation<br>(602); 702 | | | **OVERRULED** |
| **25:2 - 25:4   Myers, Brian 12-12-2019**<br>25 2    A.   I -- I mean, I don't know exactly how that<br>25 3    all occurs.  I just know that there is a linkage<br>25 4    between this loud noise and -- and damage. | **Re: [25:2-25:4]**<br>Def Objection - Foundation<br>(602); 702 | | | **OVERRULED** |
| **27:1 - 27:4   Myers, Brian 12-12-2019**<br>27 1    Q.   You don't understand, sir, that if you<br>27 2    lose hairs, as shown in this picture, on the inner<br>27 3    ear, in the cochlea, that people will develop gaps in<br>27 4    their ability to hear certain frequencies? | | | **Re: [27:1-27:4]**<br>602, 701, speculation | **OVERRULED** |
| **27:8 - 27:11   Myers, Brian 12-12-2019**<br>27 8    A.   So I know that -- or my understanding is<br>27 9    that when people start to develop hearing loss, it<br>27 10    usually show up -- shows up in certain frequencies<br>27 11    in -- before it spreads to other frequencies. | | | **Re: [27:8-27:11]**<br>602, 701, speculation | **OVERRULED** |
| **27:12 - 27:13   Myers, Brian 12-12-2019**<br>27 12    Q.   Okay.<br>27 13    A.   I don't know if that's your question. | | | | |
| **40:20 - 41:22   Myers, Brian 12-12-2019**<br>40 20    Q.   The beginning of that sequence said:<br>40 21    "With hearing damage" and then it went through and<br>it<br>40 22    is going through different conditions associated with<br>40 23    hearing damage, fair?<br>40 24    A.   I -- we haven't -- haven't seen the rest<br>40 25    of it, but, yeah, that's probably where we are going<br>41 1    here.<br>41 2    Q.   Oh, okay.  Well, you saw the first one.<br>41 3    You --<br>41 4    A.   I did.<br>41 5    Q.   -- you know that tinnitus is associated | **Re: [40:20-41:22]**<br>Def Objection - Prejudice (403);<br>Foundation (602); MIL 13 | | | **OVERRULED** |

| | | | |
|---|---|---|---|
| 41 6   with damage to the ear, fair? | | | |
| 41 7   A.   My understanding is that that can be | | | |
| 41 8   something that happens with hearing loss. | | | |
| 41 9   Q.   Okay. | | | |
| 41 10   MR. BUCHANAN:  Let's replay that beginning | | | |
| 41 11   portion again. | | | |
| 41 12   (Video played.) | | | |
| 41 13   MR. BUCHANAN:  Pause. | | | |
| 41 14   BY MR. BUCHANAN: | | | |
| 41 15   Q.   It says: "With hearing damage what else | | | |
| 41 16   could you experience?" | | | |
| 41 17   Right? | | | |
| 41 18   A.   That's what that says. | | | |
| 41 19   Q.   Okay.  And the first answer to that was | | | |
| 41 20   what, sir? | | | |
| 41 21   A.   They -- there was a clip and then they | | | |
| 41 22   said: "Tinnitus." | | | |
| **51:22 - 51:24   Myers, Brian 12-12-2019** | | | |
| 51 22   Q.   So one of the things you are trying to do | | | |
| 51 23   with hearing protection devices is make sure we don't | | | |
| 51 24   find ourselves in that position, right? | | | |
| **52:2 - 52:5   Myers, Brian 12-12-2019** | | | |
| 52 2   A.   We are trying to provide the -- the tools | | | |
| 52 3   and the products to -- or the products to help people | | | |
| 52 4   not be overexposed to -- to loud noises and -- and | | | |
| 52 5   prevent maybe some of what we saw there. | | | |
| **52:7 - 52:9   Myers, Brian 12-12-2019** | | | |
| 52 7   Q.   Would you agree that if you are going to | | | |
| 52 8   make hearing protection devices it's very important | | | |
| 52 9   that they actually protect hearing? | | | |
| **52:12 - 52:25   Myers, Brian 12-12-2019** | Re: [52:21-52:25] | Re: [52:21-52:25] | |
| 52 12   A.   I'm -- that's -- we try to design and | Def Objection - 403; Foundation | Def Objection - | |
| 52 13   manufacture and market devices that do protect | (602) | 403; Foundation | |
| 52 14   hearing. | | (602) | |
| 52 15   BY MR. BUCHANAN: | | **OVERRULED** | |
| 52 16   Q.   Okay.  You agree that one of the ways in | | | |
| 52 17   which you discern the ability of a hearing protection | | | |
| 52 18   device to protect hearing is you test it, right? | | | |
| 52 19   A.   Yeah, certainly hearing protection is | | | |

| | | | | |
|---|---|---|---|---|
| 52 20<br>52 21<br>52 22<br>52 23<br>52 24<br>52 25 | tested.<br>Q.   Okay.  And certainly, as a manufacturer of<br>hearing protection devices, if you are going to test<br>those devices, you should test them in a way to assure<br>that people that use them are actually going to get<br>protection, right? | | | |
| **53:3 - 53:5**<br>53 3<br>53 4<br>53 5 | **Myers, Brian 12-12-2019**<br>A.   So, I mean, in -- in that regard for some<br>tests, some tests are stipulated as, you know, this is<br>the test that you have to run. | **Re: [53:2-53:5]**<br>Def Objection - 403; Foundation<br>(602) | Re: [53:2-53:5]<br>Def Objection -<br>403; Foundation<br>(602)<br>**OVERRULED** | |
| **53:23 - 54:1**<br>53 23<br>53 24<br>53 25<br>54 1 | **Myers, Brian 12-12-2019**<br>Q.   Okay.  And that if tests are required to<br>ensure that it has those characteristics, you should<br>run those tests, right?<br>A.   If those tests are required, yes. | | | |
| **54:2 - 54:7**<br>54 2<br>54 3<br>54 4<br>54 5<br>54 6<br>54 7 | **Myers, Brian 12-12-2019**<br>Q.   Well, to ensure that a product has certain<br>characteristics, you may need to run certain tests,<br>right?<br>A.   Sure, that's my understanding.<br>Q.   And 3M as a company knows how to run tests<br>to evaluate characteristics if it wants to, right? | **Re: [54:6-54:7]**<br>Def Objection - 403; Foundation<br>(602) | Re: [54:6-54:7]<br>Def Objection -<br>403; Foundation<br>(602)<br>**OVERRULED** | |
| **54:10 - 54:10**<br>54 10 | **Myers, Brian 12-12-2019**<br>A.   Yeah, certainly we do some testing. | **Re: [54:9-54:10]**<br>Def Objection - 403; Foundation<br>(602) | Re: [54:9-<br>54:10]<br>Def Objection -<br>403; Foundation<br>(602)<br>**OVERRULED** | |
| **54:24 - 55:1**<br>54 24<br>54 25<br>55 1 | **Myers, Brian 12-12-2019**<br>Q.   Well, the green --<br>A.   The green --<br>Q.   -- end was continuous protection? | | | |
| **55:4 - 55:6**<br>55 4<br>55 5<br>55 6 | **Myers, Brian 12-12-2019**<br>BY THE WITNESS:<br>A.   But -- but the green end certainly was<br>designed to keep noise out. | | | |

| 55:8 - 55:18 | Myers, Brian 12-12-2019 | | | Re: [55:8-55:18] | OVERRULED |
|---|---|---|---|---|---|
| 55 8 | Q.   It was designed to keep noise out | | | 701 | |
| 55 9 | continuously, correct? | | | | |
| 55 10 | A.   That's my understanding of the -- of | | | | |
| 55 11 | the -- when you had that end in, that's -- that's what | | | | |
| 55 12 | it was supposed to do. | | | | |
| 55 13 | Q.   Continuous protection, right? | | | | |
| 55 14 | A.   Yes, continuous protection. | | | | |
| 55 15 | Q.   The yellow end was designed to allow | | | | |
| 55 16 | people to hear-thru, right? | | | | |
| 55 17 | A.   That was a term that -- that was used in | | | | |
| 55 18 | the marketing. | | | | |
| **57:25 - 58:2** | **Myers, Brian 12-12-2019** | Re: [57:25-58:2] | Re: [57:25-58:2] | | |
| 57 25 | So whether it is earmuffs or earplugs, a | Def Objection - Prejudice (403); | Def Objection - Prejudice (403); | | |
| 58 1 | seal is an important, very important characteristic, | Foundation (602). | Foundation (602). | | |
| 58 2 | right? | | **OVERRULED** | | |
| **58:5 - 58:6** | **Myers, Brian 12-12-2019** | Re: [58:5-58:6] | Re: [58:5-58:6] | | |
| 58 5 | A.   My understanding is that a seal is | Def Objection - Foundation (602); Prejudice (403) | Def Objection - Foundation (602); Prejudice (403) | | |
| 58 6 | important in -- in these kinds of hearing protectors. | | **OVERRULED** | | |
| **58:25 - 59:10** | **Myers, Brian 12-12-2019** | | | | |
| 58 25 | Q.   Okay.  Is this called a passive hearing | | | | |
| 59 1 | protection device? | | | | |
| 59 2 | A.   We -- we would have considered it a | | | | |
| 59 3 | passive hearing protection device because it had no -- | | | | |
| 59 4 | no power. | | | | |
| 59 5 | Q.   Okay.  So in your field, in the field of | | | | |
| 59 6 | hearing protection, there are active hearing | | | | |
| 59 7 | protection devices and there are passive hearing | | | | |
| 59 8 | protection devices, fair? | | | | |
| 59 9 | A.   So that's one way to distinguish between | | | | |
| 59 10 | two devices. | | | | |
| **61:21 - 62:1** | **Myers, Brian 12-12-2019** | | | Re: [61:21-62:14] | OVERRULED |
| 61 21 | Q.   Okay, sir.  Well, let's say, what concern | | | 602; 701 | |

| | | | | |
|---|---|---|---|---|
| 61 22     would you have, sir, as an overseer of hearing<br>61 23     protection devices for many, many years and a product<br>61 24     manager who brought this product to market, if you<br>61 25     learned that a passive hearing protection device like<br>62 1      this one didn't seal in the ear? | | | | |
| **62:4 - 62:14    Myers, Brian 12-12-2019**<br>62 4      A.  I mean, I -- I think that's something that<br>62 5      I would talk to the technical group about.<br>62 6      BY MR. BUCHANAN:<br>62 7      Q.  Didn't you --<br>62 8      A.  It's a --<br>62 9      Q.  -- oversee the technical group, sir, when<br>62 10     this product was being developed?<br>62 11     A.  No.<br>62 12     Q.  Didn't Mr. Berger report to you in the<br>62 13     late '90s when this product was being developed?<br>62 14     A.  He did report to me. | | | **Re: [61:21-62:14]**<br>602; 701 | **OVERRULED** |
| **62:15 - 62:18    Myers, Brian 12-12-2019**<br>62 15     Q.  Okay.<br>62 16     A.  But the question that you asked was about<br>62 17     the technical function and that reported through a guy<br>62 18     named Dick Knauer. | | | | |
| **63:16 - 63:18    Myers, Brian 12-12-2019**<br>63 16     Q.  Okay.  And if the sounds leak around that<br>63 17     seal, what does that mean?<br>63 18     A.  It's a concern. | | | **Re: [63:16-63:19]**<br>602; 701 | **OVERRULED** |
| **63:19 - 63:19    Myers, Brian 12-12-2019**<br>63 19     Q.  Why is it a concern? | | | **Re: [63:16-63:19]**<br>602; 701 | **OVERRULED** |
| **63:22 - 63:22    Myers, Brian 12-12-2019**<br>63 22     A.  Again, because the seal is important. | | | **Re: [63:22-63:22]**<br>602; 701 | **OVERRULED** |
| **64:14 - 64:16    Myers, Brian 12-12-2019**<br>64 14     Q.  Okay.  And if you don't have a seal, then<br>64 15     the sound can get around, right, that's your<br>64 16     understanding? | | | **Re: [64:14-64:16]**<br>602; 701 | **OVERRULED** |
| **64:19 - 64:24    Myers, Brian 12-12-2019**<br>64 19     A.  That's my basic understanding.<br>64 20     BY MR. BUCHANAN: | | | **Re: [64:19-64:24]**<br>Hearsay | **OVERRULED** |

Myers, Brian 12-12-2019                                                                                                    10

| | | | | |
|---|---|---|---|---|
| 64 21    Q.   Okay.  And you said that it has been told<br>64 22    to you, correct?<br>64 23    A.   The -- that's -- has -- has been conveyed<br>64 24    to me by the technical group. | | | | |
| **67:5 - 67:6    Myers, Brian 12-12-2019**<br>67 5    Q.   Right.  You certainly don't want them<br>67 6    loosening and breaking the seal, right? | | | **Re: [67:5-67:10]**<br>701; 602 | **OVERRULED** |
| **67:9 - 67:10    Myers, Brian 12-12-2019**<br>67 9    A.   I think the -- I think the idea is to<br>67 10    maintain a seal. | | | **Re: [67:5-67:10]**<br>701; 602 | **OVERRULED** |
| **67:16 - 67:18    Myers, Brian 12-12-2019**<br>67 16    Q.   And you certainly wouldn't want that to<br>67 17    happen in a way that was imperceptible to the wearer,<br>67 18    correct? | | | **Re: [67:16-67:18]**<br>701; 602 | **OVERRULED** |
| **67:21 - 67:22    Myers, Brian 12-12-2019**<br>67 21    A.   I think that's not something you would<br>67 22    want to happen. | | | **Re: [67:21-67:22]**<br>701; 602 | **OVERRULED** |
| **67:24 - 67:25    Myers, Brian 12-12-2019**<br>67 24    Q.   Because then they wouldn't even know they<br>67 25    needed to fix it, right? | | | **Re: [67:24-68:6]**<br>nonresponsive; 602 | **OVERRULED** |
| **68:4 - 68:6    Myers, Brian 12-12-2019**<br>68 4    A.   I -- I think it would depend upon what<br>68 5    training or what they had been told in terms of how to<br>68 6    wear the product. | | | **Re: [67:24-68:6]**<br>nonresponsive; 602 | **OVERRULED** |
| **68:8 - 68:10    Myers, Brian 12-12-2019**<br>68 8    Q.   And you agree it would be a fair concern<br>68 9    that if it loosened or the seal broke, that the users<br>68 10    of the device would not be getting protection, right? | | | **Re: [68:8-68:10]**<br>701; 602; 403; asked and<br>answered | **OVERRULED** |
| **68:14 - 68:16    Myers, Brian 12-12-2019**<br>68 14    A.   So I think that's the question you asked<br>68 15    me before, and I -- it is a technical question about<br>68 16    what protection they would get. | | | **Re: [68:14-68:16]**<br>701; 602; 403; asked and<br>answered | **OVERRULED** |
| **68:25 - 69:4    Myers, Brian 12-12-2019**<br>68 25    Q.   Is that a technical question, sir?<br>69 1    A.   Yes.<br>69 2    Q.   I think you told us that a seal is<br>69 3    essential for hearing -- passive hearing protection<br>69 4    device like this one, right? | **Re: [69:2-69:4]**<br>Def Objection - 403; Foundation<br>(602) | | | **OVERRULED** |

Myers, Brian 12-12-2019                                                                                                                11

| | | | |
|---|---|---|---|
| **69:7 - 69:9   Myers, Brian 12-12-2019** | **Re: [69:7-69:9]** | | **OVERRULED** |
| 69  7     Q.   Didn't you tell us that?<br>69  8     A.   So -- so what I -- what I believe I said<br>69  9     was that getting a -- a seal is important. | Def Objection - 403; Foundation (602) | | |
| **69:10 - 69:16   Myers, Brian 12-12-2019** | | | |
| 69 10     Q.   And you told us why that was, because the<br>69 11     seal keeps the sound out, right?<br>69 12     A.   Yes, that's correct.<br>69 13     Q.   And let's follow this through.<br>69 14     If you don't have a seal, sound gets in,<br>69 15     right?<br>69 16     A.   Yes. | | | |
| **74:21 - 75:13   Myers, Brian 12-12-2019** | | | |
| 74 21     Q.   Okay.  And what you list here on your --<br>74 22     your CV, your resume here, sir, is Aearo Corporation,<br>74 23     formerly Cabot Safety Corporation -- excuse me, sir --<br>74 24     Vice President Hearing Conservation Products.<br>74 25     Did I read that correctly?<br>75  1     A.   Yes.<br>75  2     Q.   From 1993 to 2008, right?  Isn't that what<br>75  3     you wrote?<br>75  4     A.   Oh, yes, I see that.  Yes.<br>75  5     Q.   Okay.  And that was your position and<br>75  6     function at Aearo Corporation, formerly Cabot Safety<br>75  7     Corporation, for some 15 years, is that right, sir?<br>75  8     A.   So, I'm not sure that -- in fact, I'm<br>75  9     pretty sure that was not my title in January of '93,<br>75 10     but at some point, with similar responsibilities at<br>75 11     some point, that's what my title was changed to.  And<br>75 12     I believe that was my title in April of '08 when 3M<br>75 13     purchased Aearo. | | | |
| **75:14 - 75:21   Myers, Brian 12-12-2019** | | | |
| 75 14     Q.   Oh, so you weren't -- I mean, this says<br>75 15     here in your CV, sir, or resume that you were a vice<br>75 16     president back in 1993.<br>75 17     Is that true?<br>75 18     A.   I don't believe that's true.  I think I<br>75 19     meant this to indicate that I had a responsibility, | | | |

| | | | | |
|---|---|---|---|---|
| 75 20 | there was a progression of titles, probably too many | | | |
| 75 21 | to -- to list or that anybody would care to read. | | | |
| **76:1 - 77:8** | **Myers, Brian 12-12-2019** | | | **Re: [76:1-77:8]** | **OVERRULED** |
| 76 1 | A.   And ultimately that was the title that I | | | improper counter; cumulative | |
| 76 2 | had in -- in April of 2008 when we were purchased by | | | | |
| 76 3 | 3M. | | | | |
| 76 4 | Q.   I mean, you listed some of the other | | | | |
| 76 5 | positions you had there at Cabot, right, before 1993? | | | | |
| 76 6 | A.   I did.  I listed those because the | | | | |
| 76 7 | responsibilities were quite different. | | | | |
| 76 8 | Q.   Okay.  Production Manager, Cabot Safety | | | | |
| 76 9 | Corp., '89 to '92, right? | | | | |
| 76 10 | A.   Yes.  It says that I was a production | | | | |
| 76 11 | manager and then ultimately the plant manager. | | | | |
| 76 12 | Q.   Right.  And I see above that, sir, | | | | |
| 76 13 | Director of Product -- excuse me -- Director of | | | | |
| 76 14 | Product Line AOSafety Respiratory Division from June | | | | |
| 76 15 | of '92 to January '93, right? | | | | |
| 76 16 | A.   Yes.  I ran the -- I -- I functioned as | | | | |
| 76 17 | the marketing person in the respiratory division -- | | | | |
| 76 18 | Q.   Okay. | | | | |
| 76 19 | A.   -- during that period of time. | | | | |
| 76 20 | Q.   And then the next position you list there | | | | |
| 76 21 | in your Aearo Corporation days is Vice President | | | | |
| 76 22 | Hearing Conservation Products, 15 years, right? | | | | |
| 76 23 | Is that what you listed? | | | | |
| 76 24 | A.   That's what the document says. | | | | |
| 76 25 | Q.   And you are saying that's not true? | | | | |
| 77 1 | A.   I tried to explain that -- I think I had a | | | | |
| 77 2 | progression of titles.  That was the last title that I | | | | |
| 77 3 | had when I had generally these responsibilities. | | | | |
| 77 4 | Q.   Okay.  It certainly lists that position | | | | |
| 77 5 | for 15 years, true? | | | | |
| 77 6 | A.   That's not my -- that's not my intention | | | | |
| 77 7 | behind the -- the document.  I had intended to list | | | | |
| 77 8 | that that was ultimately the title that I had. | | | | |
| **84:1 - 84:21** | **Myers, Brian 12-12-2019** | | | | |
| 84 1 | As I understand your testimony, sir, there | | | | |

| | | | | |
|---|---|---|---|---|
| 84 2 | was Cabot Corporation in the late '80s, they had Aearo | | | |
| 84 3 | or E-A-R within it, right? | | | |
| 84 4 | A.   So my understanding when I joined in '89 | | | |
| 84 5 | is that E-A-R was a division of Cabot and then at some | | | |
| 84 6 | point Cabot bought another safety products company and | | | |
| 84 7 | the entity ultimately was named Cabot Safety, and then | | | |
| 84 8 | at some point that entity was ultimately re -- renamed | | | |
| 84 9 | to Aearo Corporation, and that was the corporation | | | |
| 84 10 | that was purchased by 3M. | | | |
| 84 11 | Q.   Understood. | | | |
| 84 12 | And after you joined 3M, sir, you | | | |
| 84 13 | maintained responsibility over passive hearing | | | |
| 84 14 | products for a period of time, is that fair? | | | |
| 84 15 | A.   I did retain.  I think I was called a | | | |
| 84 16 | product manager at that time, but I did retain some | | | |
| 84 17 | responsibilities. | | | |
| 84 18 | Q.   I think what you listed here was that you | | | |
| 84 19 | were the Portfolio Manager for Passive Hearing | | | |
| 84 20 | Products, right? | | | |
| 84 21 | A.   Yes. | | | |
| **85:3 - 85:12**  **Myers, Brian 12-12-2019** | | Re: [85:3-85:12] | Re: [85:3-85:12] | |
| 85 3 | Q.   Okay.  So as I understand the timing here, | Def Objection - Foundation (602); Prejudice (403); MIL 7 | Def Objection - Foundation (602); Prejudice (403); MIL 7 | |
| 85 4 | in 2007, 3M and Aearo agreed to that transaction and | | **OVERRULED** | |
| 85 5 | it closes in early 2008, right? | | | |
| 85 6 | A.   That's my -- my understanding of the | | | |
| 85 7 | dates.  It was announced in 2007 and closed in 2008. | | | |
| 85 8 | Q.   And 3M paid $1.2 billion for Aearo | | | |
| 85 9 | Corporation, right? | | | |
| 85 10 | A.   I don't recall the numbers specifically. | | | |
| 85 11 | Q.   Did it end with a B? | | | |
| 85 12 | A.   It -- it was -- | | | |
| **85:15 - 85:15**  **Myers, Brian 12-12-2019** | | Re: [85:15-85:15] | Re: [85:14-85:15] | |
| 85 15 | A.   It was in that neighborhood. | Def Objection - Foundation (602); Ambiguous (611, 403); MIL 7 | Def Objection - Foundation (602); | |

| | | | | |
|---|---|---|---|---|
| | | Ambiguous (611, 403); MIL 7 **OVERRULED** | | |
| **85:17 - 85:19   Myers, Brian 12-12-2019** | | | | |
| 85 17        Q.   Okay.  And you then assumed the<br>85 18        responsibility to oversee passive hearing products at<br>85 19        3M, right? | | | | |
| **85:22 - 85:24   Myers, Brian 12-12-2019** | | | | |
| 85 22        A.   Yes, I was -- now that I look at the -- at<br>85 23        the CV, I was the portfolio manager for the passive<br>85 24        hearing group -- | | | | |
| **86:2 - 86:2   Myers, Brian 12-12-2019** | | | | |
| 86 2        A.   -- at that time. | | | | |
| **86:18 - 86:24   Myers, Brian 12-12-2019** | | | | |
| 86 18        Q.   And back in the late '90s when this first<br>86 19        showed up on your radar, "this" being this development<br>86 20        project that resulted in the Combat Arms, you were<br>86 21        the -- what was that -- project manager for that<br>86 22        project, is that right?<br>86 23        A.   Yes.  I think you'll see on new product<br>86 24        documents that I was listed as the project manager. | | | | |
| **90:1 - 90:14   Myers, Brian 12-12-2019** | | | Re: [90:1-90:14]<br>Baker MIL 1 | **OVERRULED** |
| 90 1        Q.   Right, right.  And, frankly, in 19 -- when<br>90 2        was the Combat Arms launched, sir, Version 2?<br>90 3        A.   I think we were able to find that our<br>90 4        first sales were in the latter part of 1999.<br>90 5        Q.   Okay.  You started selling in '99?<br>90 6        A.   Yes, that's correct.<br>90 7        Q.   And -- and really, just in terms of<br>90 8        project prioritization within Aearo, I mean, this was<br>90 9        as high a probability of success project as you all<br>90 10        had, isn't that true?<br>90 11        A.   On this document it -- it shows a very<br>90 12        high probability of success, but I'm thinking that the<br>90 13        document was from November of 1999, so we had already<br>90 14        sold some at that point. | | | | |

| 99:16 - 100:21   Myers, Brian 12-12-2019 | | | Re: [100:14-100:21] | OVERRULED |
|---|---|---|---|---|
| 99 16 | Q.   Okay.  And so on this project summary | | 403; 401; Baker MIL 1 | |
| 99 17 | sheet, one of the things you do is provide a product | | | |
| 99 18 | description and positioning, right, second line? | | | |
| 99 19 | A.   Yes, product description and positioning | | | |
| 99 20 | is one of the blocks that was completed on the | | | |
| summary | | | | |
| 99 21 | sheet. | | | |
| 99 22 | Q.   Right.  And it says: "Nonlinear plug to | | | |
| 99 23 | be sold to the military and as a shooter's plug," | | | |
| 99 24 | right? | | | |
| 99 25 | A.   That's what it says. | | | |
| 100 1 | Q.   So at the time of launch or shortly around | | | |
| 100 2 | the time of launch in 1999, you had identified two | | | |
| 100 3 | target segments for this product line, fair? | | | |
| 100 4 | A.   This says the military and as shooter's | | | |
| 100 5 | plug.  I guess the military used it as a shooter's | | | |
| 100 6 | plug, but, yes, two, there is two distinct areas | | | |
| 100 7 | brought out there. | | | |
| 100 8 | Q.   Well, yes.  Product description and | | | |
| 100 9 | positioning, okay. | | | |
| 100 10 | Military would be a channel, right?  Or a | | | |
| 100 11 | customer source, correct? | | | |
| 100 12 | A.   Yeah.  I'm thinking it is more of a | | | |
| 100 13 | customer. | | | |
| 100 14 | Q.   Okay.  And then you also had a market of | | | |
| 100 15 | outdoorsman, hunters, shooters, right? | | | |
| 100 16 | A.   And I think that's what was intended by | | | |
| 100 17 | the phrase "shooter's plug." | | | |
| 100 18 | Q.   Okay.  And if we scroll down here, we see | | | |
| 100 19 | Probability of Success, 90 percent. | | | |
| 100 20 | Do you see that, in the -- yeah -- | | | |
| 100 21 | A.   Yes. | | | |
| **104:2 - 104:3   Myers, Brian 12-12-2019** | | Re: [104:2-104:3] | Re: [104:2-104:3] | OVERRULED |
| 104 2 | Q.   You didn't own all of the technology you | Def Objection - Foundation | Baker MIL 1 | |
| 104 3 | needed to sell the Combat Arms Version 2, right? | (602); Prejudice (403); calls for | | |
| | | a legal conclusion. | | |
| **104:7 - 104:10   Myers, Brian 12-12-2019** | | | Re: [104:7-104:10] | OVERRULED |
| 104 7 | A.   So the royalty agreement involved a -- an | | Baker MIL 1 | |

| | | | | |
|---|---|---|---|---|
| 104 8   agreement with a company called ISL out of Europe who<br>104 9   had developed some of the technology that was<br>104 10   incorporated into the product. | | | | |
| **104:12 - 104:13   Myers, Brian 12-12-2019**<br>104 12   Q.   Okay.  And -- and you and ISL developed<br>104 13   the product, right? | **Re: [104:12-104:20]**<br>**Plt Objection - improper counter per PTO 64** | **Re: [104:12-104:13]**<br>Plt Objection - improper counter per PTO 64<br>**SUSTAINED**<br>**Re: [104:17-104:20]**<br>Plt Objection - improper counter per PTO 64<br>**SUSTAINED** | **Re: [104:12-104:20]**<br>402; 403; misstates evidence | **Prior ruling stands.** |
| **104:17 - 104:20   Myers, Brian 12-12-2019**<br>104 17   A.   I think I'd say that the product was a<br>104 18   collaboration between ISL, the US military, and us.<br>104 19   Q.   You said the US military?<br>104 20   A.   Yes. | **Re: [104:12-104:20]**<br>**Plt Objection - improper counter per PTO 64** | **Re: [104:12-104:13]**<br>Plt Objection - improper counter per PTO 64<br>**SUSTAINED**<br>**Re: [104:17-104:20]**<br>Plt Objection - improper counter per PTO 64<br>**SUSTAINED** | **Re: [104:12-104:20]**<br>402; 403; misstates evidence | **Prior ruling stands.** |
| **105:18 - 105:24   Myers, Brian 12-12-2019**<br>105 18   (WHEREUPON, a certain document was<br>105 19   marked Brian Myers Deposition Exhibit<br>105 20   No. 5, for identification, as of<br>105 21   12/12/2019.)<br>105 22   BY MR. BUCHANAN: | | | | |

| | | | |
|---|---|---|---|
| 105 23     Q.   I'm passing you Exhibit 5 to your<br>105 24        deposition, sir. | | | |
| **105:25 - 106:23   Myers, Brian 12-12-2019** | **Re: [106:12-106:23]**<br>Def Objection - Foundation<br>(602). | | **OVERRULED** |
| 105 25        In 2006, sir, you had some interactions<br>106 1        with folks from the government concerning an item<br>106 2        description for the Combat Arms.<br>106 3        Do you recall that?<br>106 4        A.   Yes, I recall, I recall some of this.<br>106 5        Q.   And you went back and forth with a Thomas<br>106 6        Sidor from the U.S. Government, right?<br>106 7        A.   Yes.<br>106 8        Q.   From DLA, right?<br>106 9        A.   Thomas Sidor, it looks like he was with<br>106 10        DSCP, but I don't -- that's probably a part of DLA.  I<br>106 11        don't know.<br>106 12        Q.   Okay.  And he understood they were getting<br>106 13        into a place in 2006 reevaluating their -- their item<br>106 14        description for the Combat Arms, or for nonlinear<br>106 15        hearing protection devices, right?<br>106 16        A.   I recall that there was a -- a contract<br>106 17        that came out for bid around that time.<br>106 18        Q.   And so when Mr. Sidor asked you for<br>106 19        details about how it came to be, you told him you<br>106 20        developed it with ISL, it was developed by ISL and<br>106 21        your engineers.<br>106 22        That's what you told the Federal<br>106 23        Government when they asked, right? | | | |
| **107:6 - 107:13   Myers, Brian 12-12-2019** | | | |
| 107 6        A.   So that's what the document says:<br>107 7        "It was developed jointly by scientists at<br>107 8        ISL (France) and our engineers and it was developed<br>to<br>107 9        address the problem with conventional hearing<br>107 10        protectors used in combat and training by soldiers."<br>107 11        Q.   And when you said that was the document<br>107 12        says, that's what you said?<br>107 13        A.   That was my reply to Tom. | | | |

| | | | | |
|---|---|---|---|---|
| **109:22 - 109:23   Myers, Brian 12-12-2019** | | | **Re: [109:22-109:23]** | **OVERRULED** |
| 109 22      Q.   You said it's ours, we have the patents on | | | 401; 403; 602; misstates record | |
| 109 23         the device, right? | | | | |
| **110:2 - 110:4   Myers, Brian 12-12-2019** | | | **Re: [110:2-110:4]** | **OVERRULED** |
| 110 2      A.   I think that there were three patents | | | 401; 403; 602; misstates record | |
| 110 3         cited and one or two of them were ISL patents and the | | | | |
| 110 4         other one was an Aearo or Cabot Safety patent. | | | | |
| **113:13 - 114:1   Myers, Brian 12-12-2019** | **Re: [113:13-114:1]** | Re: [113:13- | | |
| 113 13      Q.   Okay.  And so you don't fuss with that | **Plt Objection - improper counter** | 114:1] | | |
| 113 14         characterization, sir, do you, that you wrote and | | Plt Objection - | | |
| 113 15         communicated to the US Defense Logistics Agency in | | improper | | |
| 113 16         2006? | | counter per PTO | | |
| 113 17      A.   Well, the only -- the only thing that I | | 64 | | |
| 113 18         would say is that it was a -- a typical practice to | | **SUSTAINED** | | |
| 113 19         talk to customers about their needs and often what did | | | | |
| 113 20         they think of products that we were developing, and I | | | | |
| 113 21         know in this case we did have conversations with a | | | | |
| 113 22         person in the -- in the US military and he did provide | | | | |
| 113 23         some clear direction about this product and its | | | | |
| 113 24         design. | | | | |
| 113 25      Q.   Who is that individual, sir? | | | | |
| 114 1      A.   It was a gentleman named Doug Ohlin. | | | | |
| **114:18 - 114:23   Myers, Brian 12-12-2019** | | | | |
| 114 18      Q.   He was in the military for a period of | | | | |
| 114 19         time when you all were developing the Combat Arms, is | | | | |
| 114 20         that fair? | | | | |
| 114 21      A.   He -- he was in the military back in the | | | | |
| 114 22         late '90s when -- when we were developing the Combat | | | | |
| 114 23         Arms Version 2. | | | | |
| **123:5 - 123:11   Myers, Brian 12-12-2019** | | | | |
| 123 5      Q.   I am passing you Exhibit 7 to your | | | | |
| 123 6         deposition, sir.  Exhibit 7 is P1489.  It is a January | | | | |
| 123 7         monthly report.  It is dated February 3rd, 1997, from | | | | |
| 123 8         an Elliott Berger to yourself. | | | | |
| 123 9         Do you see that, sir? | | | | |

| | | | | |
|---|---|---|---|---|
| 123 10    A.   I do see that in the heading on the<br>123 11    report. | | | | |
| **124:1 - 124:22   Myers, Brian 12-12-2019**<br>124 1    Under Product Development, the fourth<br>124 2    paragraph says:  "In response to a request," do you<br>124 3    see that paragraph, sir?<br>124 4    A.   I see the paragraph that begins with that.<br>124 5    Q.   "In response to a request from Armand<br>124 6    Dancer of ISL, arrangements were made to obtain a<br>124 7    suitable confidentiality agreement so that two of<br>124 8    Armand's representatives can visit E-A-RCAL laboratory<br>124 9    in March to discuss their development of a<br>124 10    level-dependent earplug and how Aearo company might<br>124 11    work with them."<br>124 12    Did I read that correctly?<br>124 13    A.   Yes, those are the words in this document.<br>124 14    Q.   Okay.  And is that your recollection, sir,<br>124 15    that in the early -- in early 1997 or so your -- your<br>124 16    lab and folks with ISL were starting to meet about a<br>124 17    nonlinear plug, fair?<br>124 18    A.    So my -- my specific recollection is<br>124 19    that -- is that in a meeting that Elliott had arranged<br>124 20    that I met at least with one person from ISL and they<br>124 21    shared with us some concepts that they were working<br>124 22    on. | | | | |
| **126:5 - 126:15   Myers, Brian 12-12-2019**<br>126 5    Q.   You and ISL were exploring, if you will,<br>126 6    is there some way that we can be mutually beneficial<br>126 7    to our mutual success by collaborating together,<br>126 8    right?<br>126 9    A.   It says to discuss their development, so,<br>126 10    yeah, that would have been talking with them to<br>126 11    discuss developing a product.<br>126 12    Q.   Right.  And -- and we know that actually<br>126 13    you ultimately became the project manager for this<br>126 14    project, right?<br>126 15    A.   Yes. | **Re: [126:5-126:11]**<br>**Def Objection - Hearsay (801, 802)** | | | **OVERRULED** |

| | | | | |
|---|---|---|---|---|
| **128:2 - 128:7   Myers, Brian 12-12-2019** | **Re: [128:2-129:12]** | | | **OVERRULED** |
| 128 2   We were looking about that paragraph: "In<br>128 3   response to a request from Armand Dancer of ISL,<br>128 4   arrangements were made to obtain a confidentiality<br>128 5   order in anticipation of a meeting."<br>128 6   Do you recall that discussion?<br>128 7   A.   We did talk about that. | Plt Objection - improper counter | | | |
| **129:9 - 129:12   Myers, Brian 12-12-2019** | **Re: [128:2-129:12]** | | | **OVERRULED** |
| 129 9   Q.   Thank you.<br>129 10   And that meeting did happen, right?<br>129 11   A.   I have a vague recollection of -- of a<br>129 12   meeting, yes. | Plt Objection - improper counter | | | |
| **132:6 - 132:18   Myers, Brian 12-12-2019** | | | | |
| 132 6   Q.   Okay.  You were on the business side of<br>132 7   things, fair, yourself at that point in time?<br>132 8   A.   Ah, yes, yes.<br>132 9   Q.   And Mr. Berger was more on the technical<br>132 10   side of things, would that be fair?<br>132 11   A.   He was certainly as more technical.<br>132 12   Q.   Okay.  Were you guys in the same building<br>132 13   at that point in time?<br>132 14   A.   I don't think we've ever had offices in<br>132 15   the same building.<br>132 16   Q.   Okay.  Was your office in the same<br>132 17   building as the lab?<br>132 18   A.   No, it was not. | | | | |
| **139:7 - 139:11   Myers, Brian 12-12-2019** | | | | |
| 139 7   Now, you are the project manager on this<br>139 8   project, sir.  Are you getting these updates from<br>139 9   Mr. Berger as well?  I don't see you cc'd on them.<br>139 10   A.   So I don't -- I don't recall this.  I can<br>139 11   read it if you want me to and see if it... | | | | |
| **158:4 - 158:10   Myers, Brian 12-12-2019** | **Re: [158:4-158:10]** | | | **SUSTAINED** |
| 158 4   Q.   Okay.  And so we looked at the discussions<br>158 5   around a meeting in sometime in the spring of 1997<br>158 6   where the ISL folks come in, there are some<br>158 7   discussions back and forth between your technical<br>team<br>158 8   and Armand Dancer and Mr. Buck about certain | Plt Objection - improper counter | | | |

| | | | | |
|---|---|---|---|---|
| 158 9<br>158 10 | technology pieces, but at some point in time the<br>company decides this is a go, right? | | | |
| **158:14 - 158:19   Myers, Brian 12-12-2019** | | **Re: [158:14-158:19]**<br>Plt Objection - improper counter | | **SUSTAINED** |
| 158 14<br>158 15<br>me a<br>158 16<br>158 17<br>158 18<br>158 19 | A.   So, again, I saw one piece of<br>correspondence from Elliott to Armand.  You gave<br>piece of correspondence that was from Elliott to<br>Elliott, so I'm not sure it ever went anywhere.  So I<br>don't want to characterize this as that there was a<br>back and forth. I don't know. | | | |
| **164:10 - 164:12   Myers, Brian 12-12-2019** | | **Re: [164:10-164:12]**<br>Def Objection - 403; Calls For<br>Legal Conclusion; Vague;<br>ambiguous (611, 403). | **Re: [164:10-164:12]**<br>Baker MIL 1 | **OVERRULED** |
| 164 10<br>164 11<br>164 12 | Q.   Okay.  Would it surprise you, sir, if you<br>licensed their patents and intellectual property for a<br>double-ended hearing protection device? | | | |
| **164:16 - 164:17   Myers, Brian 12-12-2019** | | **Re: [164:16-164:17]**<br>Def Objection - 403; Calls For<br>Legal Conclusion; Vague;<br>ambiguous (611, 403). | **Re: [164:16-164:17]**<br>Baker MIL 1 | **OVERRULED** |
| 164 16<br>164 17 | A.   My understanding is that's a part of what<br>was licensed in this agreement. | | | |
| **167:13 - 168:4   Myers, Brian 12-12-2019** | | | **Re: [167:13-168:4]**<br>403: 602; 701 | **OVERRULED** |
| 167 13<br>167 14<br>167 15<br>167 16<br>167 17<br>167 18<br>167 19<br>167 20<br>167 21<br>167 22<br>167 23<br>167 24<br>167 25<br>168 1<br>168 2<br>168 3<br>168 4 | Q.   You would agree, wouldn't you, sir, if you<br>are going to market a product for hearing protection,<br>you would test it to make sure that it protects<br>hearing, right?<br>A.   We would do whatever testing technical<br>deemed was appropriate.<br>Q.   I mean, you as the project manager here,<br>sir, before you were putting hearing protection<br>devices on the street, wouldn't you agree that you<br>should test them to make sure that they really do<br>protect hearing?<br>A.   Well, I would do what the technical group<br>said that I needed to do to represent the product<br>appropriately.<br>Q.   Okay.  And so then it was the technical<br>group that told you that no testing was required for<br>the Combat Arms? | | | |
| **168:7 - 168:8   Myers, Brian 12-12-2019** | | | **Re: [168:7-168:8]**<br>403: 602; 701 | **OVERRULED** |
| 168 7<br>168 8 | A.   I'm not sure that no testing was<br>performed.  I don't know. | | | |

| | | | | |
|---|---|---|---|---|
| **169:9 - 169:11   Myers, Brian 12-12-2019** | | | **Re: [169:9-169:11]** 602; 701; 403; argumentative; vague | **OVERRULED** |
| 169 9     Is your testimony that it is okay to sell<br>169 10    a hearing protection device without testing to see<br>169 11    whether it protects hearing? | | | | |
| **169:15 - 169:16   Myers, Brian 12-12-2019** | | | **Re: [169:15-169:16]** 602; 701; 403; argumentative; vague | **OVERRULED** |
| 169 15    A.   I would -- I would rely on technical to<br>169 16    tell me what tests needed to be performed. | | | | |
| **172:2 - 172:5   Myers, Brian 12-12-2019** | **Re: [172:2-172:5]** Def Objection - Foundation (602); Prejudice (403) | Re: [171:22-172:5] Def Objection - Foundation (602); Prejudice (403) **OVERRULED** | | |
| 172 2    Q.   As a consumer, sir, don't you hope that<br>172 3    when somebody tells you that something is safe or<br>172 4    protective that they've actually tested to make sure<br>172 5    that it is safe and protective? | | | | |
| **172:8 - 172:10   Myers, Brian 12-12-2019** | **Re: [172:8-172:10]** Def Objection - Foundation (602); Prejudice (403) | Re: [172:8-172:13] Def Objection - Foundation (602); Prejudice (403) **OVERRULED** | | |
| 172 8    Q.   Don't you expect that as a consumer?<br>172 9    A.   I would hope that they could stand behind<br>172 10    the claims that they made. | | | | |
| **174:8 - 174:13   Myers, Brian 12-12-2019** | | | | |
| 174 8    Q.   I am passing you, sir, what we are marking<br>174 9    as Exhibit 12.  Exhibit 12 is an e-mail, sir, and it<br>174 10    is P922, using the other numbering system.<br>174 11    But it is an e-mail from Mr. Berger to<br>174 12    yourself, agreed?<br>174 13    A.   It is. | | | | |
| **175:2 - 175:14   Myers, Brian 12-12-2019** | | | | |
| 175 2    Q.   Okay.  So Mr. Burger sent you an e-mail<br>175 3    and said: "combat arms plug."<br>175 4    That's the subject line, correct?<br>175 5    A.   Yes.<br>175 6    Q.   And it -- it's an e-mail, it looks like,<br>175 7    addressed to Armand.<br>175 8    Do you see that?<br>175 9    A.   I do.<br>175 10    Q.   And what was ma- -- Mr. Dancer's first<br>175 11    name? | | | | |

| | | | | |
|---|---|---|---|---|
| 175 12  A.   Armand.<br>175 13  Q.   Okay.  So this is a -- some correspondence<br>175 14  with Armand Dancer that he is forwarding to you, fair? | | | | |
| **176:2 - 176:5**   **Myers, Brian 12-12-2019** | **Re: [176:2-176:9]**<br>Def Objection - Foundation (602); Prejudice (403) | | | **OVERRULED** |
| 176 2  I want to look at this communication that<br>176 3  you got from Mr. Berger, Friday, November 19, 1999,<br>176 4  whether this was sent or whether it wasn't sent, you<br>176 5  are not fussing with the fact that you got it, right? | | | | |
| **176:8 - 177:5**   **Myers, Brian 12-12-2019** | **Re: [176:2-176:9]**<br>Def Objection - Foundation (602); Prejudice (403)<br>**Re: [176:10-176:13]**<br>Def Objection - Foundation (602); Prejudice (403); Argumentative (611). | | **Re: [176:14-177:5]**<br>602; argumentative; assumes facts; 403 | **OVERRULED** |
| 176 8   A.   So I don't recall receiving this.<br>176 9   BY MR. BUCHANAN:<br>176 10   Q.   That is, was there another Brian Myers,<br>176 11   sir, at Aearo?<br>176 12   A.   No.  I'm just saying I don't recall<br>176 13   receiving this.<br>176 14   Q.   Okay.  Fair enough.<br>176 15   I mean, you are not doubting that you did?<br>176 16   A.   I'm saying that I don't recall receiving<br>176 17   this.<br>176 18   Q.   Okay.<br>176 19   It says: "It recently occurred to us that<br>176 20   we have no data on the actual version of the nonlinear<br>176 21   earplug that we are now selling in the US - namely,<br>176 22   the dual-ended combat arms plug."<br>176 23   Did I read that correctly?<br>176 24   A.   Yes, those are the words in the document.<br>176 25   Q.   Okay.  Does that help refresh your<br>177 1   recollection, sir, that as of the date on the other<br>177 2   document we were looking at, which happens to be the<br>177 3   same date, you all had no data on the actual version<br>177 4   of the Combat Arms Earplug that you were then selling<br>177 5   in the United States? | | | | |

| | | | | |
|---|---|---|---|---|
| **177:9 - 177:11   Myers, Brian 12-12-2019**<br>177 9      A.   I mean, Elliott says what he says.  I<br>177 10     don't -- I don't know -- I mean, that -- those are the<br>177 11     words in the document. | | | **Re: [177:9-177:11]**<br>602; argumentative; assumes<br>facts; 403 | **OVERRULED** |
| **177:17 - 177:19   Myers, Brian 12-12-2019**<br>177 17     Do you recall reviewing and signing off on<br>177 18     it, sir?<br>177 19     A.   No, I don't recall this e-mail. | | | | |
| **179:2 - 179:7   Myers, Brian 12-12-2019**<br>179 2      Q.   Okay.  And -- and the testing that was on<br>179 3      hand at your company at the time when you were the<br>179 4      vice president for this group, for the Combat Arms<br>179 5      Earplug that was now being sold in the United States,<br>179 6      was zero.<br>179 7      That's what Mr. Berger said, right? | **Re: [179:2-179:16]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | Re: [179:2-<br>179:16]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** | | |
| **179:11 - 179:21   Myers, Brian 12-12-2019**<br>179 11     A.   He says:  "It recently occurred to us that<br>179 12     we have no data on the actual version of the<br>nonlinear<br>179 13     earplug that we are now selling in the US" --<br>179 14     Q.   Okay.<br>179 15     A.   -- "namely, the dual-ended combat arms<br>179 16     plug."<br>179 17     Q.   Okay.  And then he says what he is going<br>179 18     to do, right?<br>179 19     A.   He says:  "Therefore, we will be<br>179 20     conducting REAT evaluations in the near future on<br>both<br>179 21     ends of the plug." | **Re: [179:2-179:16]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | Re: [179:2-<br>179:16]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** | **Re: [179:17-179:21]**<br>Foundation (602); Prejudice<br>(403) | **OVERRULED** |
| **181:6 - 181:9   Myers, Brian 12-12-2019**<br>181 6      Are you saying, sir, that you're<br>181 7      comfortable as a manufacturer of hearing protection<br>181 8      devices selling the military hearing protection that<br>181 9      you've never tested? | **Re: [181:6-181:15]**<br>Def Objection - Prejudice (403);<br>Foundation (602). | | | **OVERRULED** |
| **181:12 - 181:15   Myers, Brian 12-12-2019**<br>181 12     A.   I'm comfortable saying that I would have<br>181 13     relied on our technical group to make sure whatever<br>181 14     tests needed to be conducted would have been<br>181 15     conducted. | **Re: [181:6-181:15]**<br>Def Objection - Prejudice (403);<br>Foundation (602). | | | **OVERRULED** |

| | | | |
|---|---|---|---|
| **183:6 - 183:13   Myers, Brian 12-12-2019** | | | |
| 183 6         Q.   Okay.  I'm just trying to find out as a<br>183 7         human being, sir, not as a business manager, taking<br>183 8         your business manager cap off, you're vice president<br>183 9         trying to grow, what, revenues 25 percent a year,<br>183 10         whatever your CV said, as a human being pushing<br>out<br>183 11         product into the market, you have no concern about<br>183 12         selling a product designed to provide safety without<br>183 13         confirming that it provides that safety? | | | **Re: [183:6-183:13]**<br>602; 701; 403; argumentative;<br>confusing, Baker MIL 1 | **OVERRULED** |
| **183:17 - 183:21   Myers, Brian 12-12-2019** | | | |
| 183 17         A.   I would have relied on the technical group<br>183 18         to -- to do whatever tests were necessary.<br>183 19         BY MR. BUCHANAN:<br>183 20         Q.   Uh-huh.  That's kind of how we find<br>183 21         ourselves here today, isn't it? | | | **Re: [183:17-183:18]**<br>602; 701; 403; argumentative;<br>confusing, Baker MIL 1<br>**Re: [183:20-183:21]**<br>Confusing; vague;<br>argumentative; 403 | **SUSTAINED as to 183:19-24. Otherwise OVERRULED.** |
| **183:24 - 183:24   Myers, Brian 12-12-2019** | | | |
| 183 24         A.   I'm not sure I understand. | | | **Re: [183:24-183:24]**<br>Confusing; vague;<br>argumentative; 403 | **SUSTAINED as to 183:19-24. Otherwise OVERRULED.** |
| **184:9 - 184:14   Myers, Brian 12-12-2019** | | | |
| 184 9         Q.   This is a mess.  You sold a product for<br>184 10         15 years, you brought it to market, sold it to the<br>184 11         public or sold it to purchasers without having testing<br>184 12         on the actual product being sold.  I'm calling that a<br>184 13         mess.<br>184 14         Do you agree with me? | | | **Re: [184:9-184:14]**<br>403; argumentative;<br>mischaracterize record; Baker<br>MIL 1 | **SUSTAINED as to "This is a mess." Otherwise OVERRULED** |
| **184:17 - 184:19   Myers, Brian 12-12-2019** | | | |
| 184 17         A.   I'm saying I would have relied on -- on<br>184 18         technical to pro -- to -- to do whatever was necessary<br>184 19         testing wise. | | | **Re: [184:17-184:19]**<br>403; argumentative;<br>mischaracterize record; Baker<br>MIL 1 | **OVERRULED** |
| **194:6 - 194:10   Myers, Brian 12-12-2019** | | | |
| 194 6         Q.   Right.  And -- and you knew not only did<br>194 7         the company not have data, and the company was<br>then<br>194 8         going to start doing some REAT testing at that point<br>194 9         in time, but you knew the military didn't have the<br>194 10         resources to be doing testing on your plug, right? | | | | |

**194:13 - 194:14   Myers, Brian 12-12-2019**
| | | | | |
|---|---|---|---|---|
| 194 13     A.  I'm not sure what testing the military may | | | | |
| 194 14     or may not have done. | | | | |

**194:17 - 194:20   Myers, Brian 12-12-2019**
| | | | | |
|---|---|---|---|---|
| 194 17     (WHEREUPON, a certain document was | | | | |
| 194 18     marked Brian Myers Deposition Exhibit | | | | |
| 194 19     No. 14, for identification, as of | | | | |
| 194 20     12/12/2019.) | | | | |

**194:25 - 195:17   Myers, Brian 12-12-2019**

| | | |
|---|---|---|
| 194 25   Q.   I'll just pass you Exhibit 14, sir. | **Re: [195:8-195:17]** | **OVERRULED** |
| 195 1   A.   Excuse me. | Def Objection - Hearsay (801, | |
| 195 2   Q.    This is an e-mail exchange between | 802) | |
| 195 3   yourself and a Robert Bosanko, right? | | |
| 195 4   Do you see that here at the bottom?  If we | | |
| 195 5   read the bottom to the top, it is 11/3/99, right? | | |
| 195 6   A.   I see this Robert Bosanko down here at the | | |
| 195 7   bottom, an e-mail. | | |
| 195 8   Q.   Yeah, Robert reaches out to you and says: | | |
| 195 9   "Brian, I need to get all of the specs/data on the | | |
| 195 10   combat arms earplug," right? | | |
| 195 11   A.    "Brian, I need to get all the specs/data | | |
| 195 12   on the combat arms earplug," yes, sir. | | |
| 195 13   Q.   Yeah.  "I am going to use them with (sic) | | |
| 195 14   one of our artillery units on post to test/use the | | |
| 195 15   nonlinear plug and get feedback from them." | | |
| 195 16   Is that right? | | |
| 195 17   A.   That's what that says. | | |

**196:17 - 197:25   Myers, Brian 12-12-2019**
| | | | | |
|---|---|---|---|---|
| 196 17   The middle e-mail is: "What follows is | | | | |
| 196 18   correspondence I received from Robert Bosanko.  He has | | | | |
| 196 19   requested specs/data on the new earplug.  Could you | | | | |
| 196 20   possibly send him some of the test results from your | | | | |
| 196 21   studies?" | | | | |
| 196 22   Do you see that? | | | | |
| 196 23   A.   I do see those words, yes. | | | | |
| 196 24   Q.   Okay.  And Doug Ohlin re -- replies to | | | | |
| 196 25   you, doesn't he? | | | | |
| 197 1   I mean, he replies to "Brain" which I -- | | | | |

| | | | |
|---|---|---|---|
| 197 2      A.   Yeah.<br>197 3      Q.   -- suppose would be a compliment, but<br>197 4      misspelling your name, correct, sir, Brian?<br>197 5      A.   Yes.<br>197 6      Q.   Okay.  He replies to you on November 8,<br>197 7      1999: "I'm at something of a loss to know what<br>197 8      studies I have done or am capable of doing in this<br>197 9      pay-shuffling operation at CHPPM."<br>197 10     Did I read that correctly?<br>197 11     A.   That's what Doug says.<br>197 12     Q.   Okay.  And then he talks about getting<br>197 13     through to Rick McKinley or Rich McKinley on<br>samples<br>197 14     of the Sound Guard foam plug.<br>197 15     Do you see that?<br>197 16     A.   I do.<br>197 17     Q.   It talks about what his lab is capable of<br>197 18     doing, right?<br>197 19     A.   It -- the words -- it says:  "His Lab<br>197 20     appears to be the only one capable in DoD at this<br>197 21     time."<br>197 22     Q.   Right.  And then he tells you that: "My<br>197 23     colleagues in Army R&D have chosen not to staff<br>this<br>197 24     capability," right?<br>197 25     A.   That's the -- those are the words, yes. | | | |
| **203:19 - 203:24   Myers, Brian 12-12-2019** | | | |
| 203 19     Q.   Okay.  Passing you, sir, what we are<br>203 20     marking as Exhibit 15 to your deposition.  And<br>203 21     Exhibit 15, marked P2017 with an alternate number<br>is a<br>203 22     chapter from a -- chapter from a textbook written by<br>203 23     your colleague in technical, Elliott Berger.<br>203 24     Do you have that before you, sir? | | | |
| **204:16 - 204:24   Myers, Brian 12-12-2019** | Re: [204:16-206:24] | Re: [204:13-206:1] | |
| 204 16     This paragraph and the chapter written by<br>204 17     Dr. Berger -- or Mr. Berger in the book edited by<br>204 18     Mr. Berger describes real-ear attenuation at threshold<br>204 19     as follows." | Def Objection - Foundation<br>(602); Prejudice (403); Hearsay<br>(801, 802) | Def Objection -<br>Foundation<br>(602); Prejudice | |

| Designation | Objection | Ruling | | |
|---|---|---|---|---|
| 204 20  "The most common, and one of the most<br>204 21  accurate HPD attenuation tests is the measurement of<br>204 22  real-ear attenuation at threshold, abbreviated REAT."<br>204 23  Do you see that, sir?<br>204 24  A.  I do see those words. | | (403); Hearsay (801, 802)<br>**OVERRULED**<br>**Re: [206:11-206:17]**<br>Def Objection - Foundation (602); Prejudice (403) Hearsay (801, 802)<br>**OVERRULED**<br>**Re: [206:18-206:19]**<br>Def Objection - Foundation (602); Ambiguous (611, 403)<br>**OVERRULED**<br>**Re: [206:22-206:24]**<br>Def Objection - 403; Foundation (602); Ambiguous (611, 403)<br>**OVERRULED** | | |
| **206:12 - 206:19   Myers, Brian 12-12-2019**<br>206 12  It continues: "REAT data are normally<br>206 13  viewed as the gold standard to which all other types<br>206 14  of measurements of attenuation are compared."<br>206 15  Did I read that correctly?<br>206 16  A.  You did.  Those are the words in the<br>206 17  document.<br>206 18  Q.  And you have that understanding, don't<br>206 19  you, sir? | **Re: [204:16-206:24]**<br>Def Objection - Foundation (602); Prejudice (403); Hearsay (801, 802)<br>**Re: [206:12-206:19]**<br>Def Objection - Foundation (602); Prejudice (403) Hearsay (801, 802)<br>**Re: [206:18-206:19]**<br>Def Objection - Foundation (602); Ambiguous (611, 403) | **Re: [204:13-206:1]**<br>Def Objection - Foundation (602); Prejudice (403); Hearsay (801, 802)<br>**OVERRULED**<br>**Re: [206:11-206:17]**<br>Def Objection - Foundation | | |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | (602); Prejudice (403) Hearsay (801, 802) **OVERRULED** **Re: [206:18-206:19]** Def Objection - Foundation (602); Ambiguous (611, 403) **OVERRULED** **Re: [206:22-206:24]** Def Objection - 403; Foundation (602); Ambiguous (611, 403) **OVERRULED** |  |  |
| **206:22 - 206:24   Myers, Brian 12-12-2019** 206 22    A.   I don't know what he means by gold 206 23        standard.  I would want him to define that, but 206 24        I'll -- I'll take his words. | **Re: [204:16-206:24]** Def Objection - Foundation (602); Prejudice (403); Hearsay (801, 802) **Re: [206:22-206:24]** Def Objection - 403; Foundation (602); Ambiguous (611, 403) | **Re: [204:13-206:1]** Def Objection - Foundation (602); Prejudice (403); Hearsay (801, 802) **OVERRULED** **Re: [206:11-206:17]** Def Objection - Foundation (602); Prejudice (403) Hearsay (801, 802) **OVERRULED** **Re: [206:18-206:19]** Def Objection - |  |  |

| | | | | |
|---|---|---|---|---|
| | | Foundation (602); Ambiguous (611, 403) **OVERRULED Re: [206:22-206:24]** Def Objection - 403; Foundation (602); Ambiguous (611, 403) **OVERRULED** | | |
| **207:2 - 207:9    Myers, Brian 12-12-2019**<br>207 2    "Virtually all available manufacturers'<br>207 3    reported data have been derived via this method, and<br>207 4    it is this procedure that is required by the EPA to<br>207 5    obtain data for compute" -- "computation of the<br>207 6    NRR (EPA, 1979)."<br>207 7    Do you see that, sir?<br>207 8    A.   I do see that.<br>207 9    Q.   And that's your understanding, right? | **Re: [207:2-207:9]**<br>Def Objection - Foundation<br>(602); Prejudice (403); Hearsay<br>(801, 802) | | | **OVERRULED** |
| **207:12 - 207:12   Myers, Brian 12-12-2019**<br>207 12    A.   That's what Elliott wrote. | **Re: [207:12-207:18]**<br>Def Objection - Foundation<br>(602); Prejudice (403);<br>Ambiguous (611, 403) | | | **OVERRULED** |
| **207:14 - 207:18   Myers, Brian 12-12-2019**<br>207 14    Q.   Okay.  And so when we talk about REAT<br>207 15    testing, REAT testing is done with a real human<br>being?<br>207 16    A.   That -- the -- so real-ear attenuation at<br>207 17    threshold, the real-ear, I think, means a real human<br>207 18    being. | **Re: [207:12-207:18]**<br>Def Objection - Foundation<br>(602); Prejudice (403);<br>Ambiguous (611, 403) | | | **OVERRULED** |
| **207:19 - 208:7    Myers, Brian 12-12-2019**<br>207 19    Q.   Well, you've seen this testing occur,<br>207 20    haven't you?<br>207 21    A.   Have I seen it occur?<br>207 22    Q.   Yes.<br>207 23    A.   Well, I don't think I've ever observed a | | | | |

| | | | |
|---|---|---|---|
| 207 24   REAT test.<br>207 25     Q.   You've never observed a REAT test in the<br>208 1    lab at Aearo over the years during your, what,<br>208 2    15 years there in Indianapolis?<br>208 3     A.   I don't recall ever having observed it.<br>208 4     Q.   Okay.  I take it, then, you never observed<br>208 5    any tests that were conducted on the Combat Arms?<br>208 6     A.   I don't recall observing any Combat Arms<br>208 7    tests. | | | |
| **218:24 - 219:3   Myers, Brian 12-12-2019**<br>218 24     Q.   And you know that one of the end outputs<br>218 25    of a real-ear attenuation threshold test is an NRR,<br>219 1    correct, sir?<br>219 2     A.   So my understanding is that such a test is<br>219 3    required to create an NRR. | | | |
| **220:15 - 220:25   Myers, Brian 12-12-2019**<br>220 15     Q.   Right.  And that's -- that's what you do<br>220 16    in a REAT test, right, you identify the attenuation<br>220 17    that a hearing protection device provides across<br>220 18    frequencies and the EPA all -- gives you all a<br>formula<br>220 19    to synthesize that into a number, right, called the<br>220 20    NRR?<br>220 21     A.   I know that that's the testing that you<br>220 22    are supposed to do that gets that NRR number.<br>220 23     Q.   And -- and NRRs, really, from your<br>220 24    perspective on the business side are a big deal,<br>220 25    right? | **Re: [220:23-220:25]**<br>Def Objection - 403 | Re: [220:23-221:5]<br>Def Objection - 403<br>**OVERRULED** | |
| **221:4 - 221:5   Myers, Brian 12-12-2019**<br>221 4     A.   They are often an important characteristic<br>221 5    that -- in the selection of the hearing protector. | **Re: [221:4-221:5]**<br>Def Objection - 403 | Re: [220:23-221:5]<br>Def Objection - 403<br>**OVERRULED** | |
| **221:8 - 221:8   Myers, Brian 12-12-2019**<br>221 8     A.   One of them. | | | |
| **221:10 - 221:11   Myers, Brian 12-12-2019**<br>221 10     A.   They are one of the characteristics that<br>221 11    are -- are often considered. | | | |

| | | |
|---|---|---|
| **221:12 - 221:14   Myers, Brian 12-12-2019**<br>221 12    Q.   I mean, you know just from a marketing<br>221 13    perspective, sir, people shop on the basis of NRR,<br>221 14    right? | **Re: [221:12-221:14]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | **Re: [221:12-<br>221:14]**<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** |
| **221:17 - 221:19   Myers, Brian 12-12-2019**<br>221 17    A.   I -- I think it's an important<br>221 18    characteristic in the marketing of the hearing<br>221 19    protector. | **Re: [221:17-221:19]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | **Re: [221:17-<br>221:19]**<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** |
| **222:15 - 222:17   Myers, Brian 12-12-2019**<br>222 15    Q.   And from your experience, sir, you know<br>222 16    that one of the characteristics that purchasers shop<br>222 17    on is NRR, right? | **Re: [222:15-222:17]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | **Re: [222:15-<br>222:17]**<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** |
| **222:20 - 222:21   Myers, Brian 12-12-2019**<br>222 20    A.   So it -- it can be a very important<br>222 21    consideration in the purchase. | **Re: [222:20-222:21]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | **Re: [222:20-<br>222:21]**<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** |
| **224:6 - 224:10   Myers, Brian 12-12-2019**<br>224 6    Q.   And I think you told us it is an important<br>224 7    one, right?<br>224 8    A.   It can be important to some customers.<br>224 9    Q.   Well, certainly it was No. 1 on your list,<br>224 10    right? | | |
| **224:13 - 224:14   Myers, Brian 12-12-2019**<br>224 13    Q.   Right?<br>224 14    A.   Not necessarily. | | |

| | | | |
|---|---|---|---|
| **238:5 - 238:7   Myers, Brian 12-12-2019** | | **Re: [238:5-238:11]** | **OVERRULED** |
| 238 5      The number, an NRR, is something that is | | 602; 701 | |
| 238 6      generated by REAT testing pursuant to EPA | | | |
| regulations, | | | |
| 238 7      fair? | | | |
| **238:10 - 238:18   Myers, Brian 12-12-2019** | | **Re: [238:5-238:11]** | **OVERRULED** |
| 238 10      A.   So my understanding is that the NRR is | | 602; 701 | |
| 238 11      defined by the EPA and calculated from a REAT | | **Re: [238:13-238:18]** | |
| test. | | 602; 701; hearsay | |
| 238 12      BY MR. BUCHANAN: | | | |
| 238 13      Q.   And you understand from your technical | | | |
| 238 14      lead, Mr. Berger, that it's intended to protect -- | | | |
| 238 15      intended to predict the protection that is achieved by | | | |
| 238 16      98 percent of wearers, right? | | | |
| 238 17      That's what he wrote. | | | |
| 238 18      A.   That's what the document says, yes. | | | |
| **239:7 - 239:10   Myers, Brian 12-12-2019** | | | |
| 239 7      Q.   Apart from the time they supervised | | | |
| 239 8      retesting of your ear foamies and fined you all | | | |
| 239 9      $900,000 for NRR fraud, what other time had the | | | |
| EPA | | | |
| 239 10      tested Aearo's products? | | | |
| **239:14 - 239:16   Myers, Brian 12-12-2019** | | | |
| 239 14      A.   I guess I don't know when the EPA tested | | | |
| 239 15      or if they tested other products.  I think that was | | | |
| 239 16      your question. | | | |
| **240:4 - 240:12   Myers, Brian 12-12-2019** | | **Re: [240:4-240:12]** | **OVERRULED** |
| 240 4      Q.   You don't remember your company getting | | 3M MIL 8; 403; 401; Baker | |
| 240 5      the largest fine ever for violation of the Noise | | MIL 1 | |
| 240 6      Control Act? | | | |
| 240 7      A.   So I recall that there was a EPA complaint | | | |
| 240 8      and -- and I -- I wasn't really involved with that at | | | |
| 240 9      the time.  I was a production manager, so it didn't | | | |
| 240 10      have -- it wasn't -- it wasn't anything that I was | | | |
| 240 11      involved with, so I -- I don't think I knew about | | | |
| 240 12      whatever you are talking about. | | | |
| **240:24 - 241:23   Myers, Brian 12-12-2019** | | **Re: [240:24-241:23]** | **OVERRULED.** |
| 240 24      Q.   Okay.  I'm passing you what's marked | | 3M MIL 8; 403; 401; Baker | **See ECF 146.** |
| 240 25      Exhibit 20, sir.  It is a press release from the | | MIL 1; hearsay | |

| | | | | |
|---|---|---|---|---|
| 241 1 | Department of Justice. | | | |
| 241 2 | I guess it is about four months into your | | | |
| 241 3 | tenure as -- well, I guess we doesn't know what your | | | |
| 241 4 | position was at that point in time.  Your CV or resume | | | |
| 241 5 | says you are the Vice President for Passive Hearing | | | |
| 241 6 | Devices. | | | |
| 241 7 | In April of 1993, sir, were ear foamies a | | | |
| 241 8 | passive hearing protection device? | | | |
| 241 9 | A.   In 1993 we sold a plug called the E-A-R | | | |
| 241 10 | foam earplug. | | | |
| 241 11 | Q.   And you all got sideways with the EPA on | | | |
| 241 12 | that one, right? | | | |
| 241 13 | A.   There was an, I think, an EPA complaint or | | | |
| 241 14 | an EPA action. | | | |
| 241 15 | Q.   Okay.  And please tell the jury whether or | | | |
| 241 16 | not you got fined? | | | |
| 241 17 | A.   So my recollection is that we paid some -- | | | |
| 241 18 | the money that I think you just quoted and settled the | | | |
| 241 19 | suit.  I -- I don't know that there was a -- that it's | | | |
| 241 20 | fair to say that we were fined.  I'd have to read this | | | |
| 241 21 | to see if those words are in here. | | | |
| 241 22 | Q.   Okay.  We'll say civil penalty. | | | |
| 241 23 | Does that sound like a good thing, sir? | | | |
| **242:2 - 242:12   Myers, Brian 12-12-2019** | | | | |
| 242 2 | A.   It does say, I -- I see in the first | | | **Re: [242:2-242:12]** | **OVERRULED.** |
| 242 3 | paragraph, "will pay a $900,000 civil penalty to | | | 602; 3M MIL 8; 403; 401; Baker | |
| 242 4 | settle allegations." | | | MIL 1; hearsay | |
| 242 5 | BY MR. BUCHANAN: | | | | |
| 242 6 | Q.   Right. | | | | |
| 242 7 | So you all paid a $900,000 fine for having | | | | |
| 242 8 | an NRR on this passive hearing protection device in | | | | |
| 242 9 | the group that you then oversaw that when the EPA went | | | | |
| 242 10 | and looked at it and tested it or oversaw the testing | | | | |
| 242 11 | of it, the testing didn't support that quoted NRR, | | | | |
| 242 12 | right? | | | | |

| | | | | |
|---|---|---|---|---|
| **242:16 - 242:25   Myers, Brian 12-12-2019** | | | **Re: [242:16-242:16]** | **OVERRULED** |
| 242 16     A.   Again, I don't know. | | | 602; 3M MIL 8; 403; 401; Baker | |
| 242 17     BY MR. BUCHANAN: | | | MIL 1; hearsay | |
| 242 18     Q.   Well, I'm sorry, sir.  Did you have | | | **Re: [242:18-242:25]** | |
| 242 19     responsibility for passive hearing protection products | | | 403; 401; 3M MIL 8; Baker | |
| 242 20     in 1993 at the time when this press release came | | | MIL 1 | |
| down? | | | | |
| 242 21     A.   I believe I started as the -- as a product | | | | |
| 242 22     manager in January of '93, according to my CV. | | | | |
| 242 23     Q.   Okay.  Product manager in passive hearing | | | | |
| 242 24     protection devices? | | | | |
| 242 25     A.   Yes. | | | | |
| **244:6 - 244:7   Myers, Brian 12-12-2019** | | | **Re: [244:6-244:7]** | **OVERRULED** |
| 244 6     Q.   Not a good thing? | | | Vague; confusing; 3M MIL 8; | |
| 244 7     A.   I think a press release. | | | hearsay; 401; 403, Baker MIL 1 | |
| **244:11 - 244:17   Myers, Brian 12-12-2019** | | | **Re: [244:11-244:17]** | **OVERRULED** |
| 244 11     Q.   Right? | | | 3M MIL 8; Baker MIL 1; | |
| 244 12     A.   I don't think anybody likes to pay a fine. | | | hearsay, 401; 403 | |
| 244 13     Q.   No, I wasn't talking about the fine, sir. | | | | |
| 244 14     I was talking that you are promoting a product with | | | | |
| an | | | | |
| 244 15     NRR that you can't substantiate when the EPA is | | | | |
| 244 16     actually watching over your shoulder.  That's what | | | | |
| I'm | | | | |
| 244 17     talking about not being a good thing. | | | | |
| **244:24 - 244:25   Myers, Brian 12-12-2019** | | | **Re: [244:24-244:25]** | **OVERRULED** |
| 244 24     A.   Well, we paid a civil penalty as a -- as a | | | 106; incomplete; asked and | |
| 244 25     result.  I don't know the details. | | | answered; 403; Baker MIL 1; | |
| | | | 3M MIL 8 | |
| **245:24 - 246:2   Myers, Brian 12-12-2019** | **Re: [245:24-246:2]** | | **Re: [245:24-246:2]** | **OVERRULED** |
| 245 24     Q.   To be quoting an NRR -- to be quoting an | Def Objection - Foundation | | Baker MIL 1 | |
| 245 25     NRR that when someone independent of you is | (602); Prejudice (403); (611); | | | |
| actually | MIL 8 | | | |
| 246 1     looking over your shoulder you can't meet, that's not | | | | |
| 246 2     a good thing, right? | | | | |
| **246:6 - 246:12   Myers, Brian 12-12-2019** | **Re: [246:6-246:6]** | Re: [246:8-246:17] | **Re: [246:6-246:12]** | **OVERRULED** |
| 246 6     A.   I don't know the details of the situation. | Def Objection - Foundation | Def Objection - | Baker MIL 1 | |
| 246 7     BY MR. BUCHANAN: | (602); Prejudice (403); (611); | MIL 8; | | |
| 246 8     Q.   Sir, you put NRRs out there so that people | MIL 8 | | | |

Myers, Brian 12-12-2019

| | | | | |
|---|---|---|---|---|
| 246 9   making purchasing decisions and safety decisions and<br>246 10   protection decisions for their workers and for<br>246 11   themselves can make proper judgments about whether<br>246 12   they are going to be protected, right? | **Re: [246:8-246:17]**<br>Def Objection - MIL 8;<br>Foundation (602); Compound (611, 403) | Foundation (602);<br>Compound (611, 403)<br>**OVERRULED** | | |
| **246:15 - 246:21   Myers, Brian 12-12-2019**<br>246 15   A.   So we label our products as is<br>246 16   appropriate, I believe, based on input from the<br>246 17   technical group.<br>246 18   BY MR. BUCHANAN:<br>246 19   Q.   Well, obviously not here, right?<br>246 20   A.   Again, I -- I don't know the specifics of<br>246 21   this situation. | **Re: [246:8-246:17]**<br>Def Objection - MIL 8;<br>Foundation (602); Compound (611, 403)<br>**Re: [246:19-246:22]**<br>Def Objection - Prejudice (403);<br>MIL 8; Foundation (602);<br>Argumentative (611, 403); (611) | Re: [246:8-246:17]<br>Def Objection - MIL 8;<br>Foundation (602);<br>Compound (611, 403)<br>**OVERRULED**<br>Re: [246:19-246:22]<br>Def Objection - Prejudice (403);<br>MIL 8;<br>Foundation (602);<br>Argumentative (611, 403);<br>(611)<br>**SUSTAINED** | Re: [246:15-246:21]<br>Baker MIL 1 | **OVERRULED** |
| **248:1 - 248:3   Myers, Brian 12-12-2019**<br>248 1   Q.   Are you telling this jury, sir, that you<br>248 2   are not aware of a concern with the NRR that appeared<br>248 3   on the Combat Arms? | **Re: [248:1-248:9]**<br>Def Objection - Vague;<br>Ambiguous (611, 403) | Re: [248:1-248:9]<br>Def Objection - Vague;<br>Ambiguous (611, 403)<br>**OVERRULED** | | |
| **248:7 - 248:19   Myers, Brian 12-12-2019**<br>248 7   A.   So there -- I recall that there was a<br>248 8   technical concern that was raised around the NRR<br>248 9   number.<br>248 10   BY MR. BUCHANAN:<br>248 11   Q.   And what's that, sir?<br>248 12   A.   I'd have to look at the -- the memo to -- | **Re: [248:1-248:9]**<br>Def Objection - Vague;<br>Ambiguous (611, 403) | Re: [248:1-248:9]<br>Def Objection - Vague;<br>Ambiguous (611, 403)<br>**OVERRULED** | | |

| | | | | |
|---|---|---|---|---|
| 248 13    to recall, but there was a technical concern that was<br>248 14    raised about the NRR.<br>248 15    Q.   And what was that concern?<br>248 16    A.   I don't recall the specific -- there was a<br>248 17    technical concern that was raised, I recall.<br>248 18    Q.   Okay.  When was it raised?<br>248 19    A.   I don't recall the timing either. | | | | |
| **249:16 - 250:3    Myers, Brian 12-12-2019**<br>249 16    Q.   So let's see if we can get to the bottom<br>249 17    of this, sir.<br>249 18    November 1999 you reach out to Doug Ohlin<br>249 19    and say, Hey, Doug, could you send me some of<br>your<br>249 20    tests, pass those along.<br>249 21    Do you recall that e-mail we looked at<br>249 22    earlier today?<br>249 23    A.   I recall that e-mail.<br>249 24    Q.   Then we get a draft e-mail from Mr. Berger<br>249 25    going to Armand Dancer that Dr. Berger -- Mr.<br>Berger<br>250 1    has said it was for your review before he sent it.  It<br>250 2    says, We have no data on the plug we are currently<br>250 3    selling. | **Re: [249:16-250:3]**<br>**Def Objection - Foundation**<br>**(602); Prejudice (403)** | Re: [249:16-<br>250:4]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** | | |
| **250:8 - 250:10    Myers, Brian 12-12-2019**<br>250 8    A.   I remember you sharing with me a -- an<br>250 9    e-mail that you represented as a draft that Elliott<br>250 10    had created. | **Re: [250:8-250:10]**<br>**Def Objection - Foundation**<br>**(602); Prejudice (403)** | Re: [250:7-<br>250:10]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** | | |
| **251:3 - 251:6    Myers, Brian 12-12-2019**<br>251 3    Q.   Okay.  And so you're selling the product,<br>251 4    you don't have test data, Doug Ohlin says he doesn't<br>251 5    have resources in his lab.  So you are all in a bit of<br>251 6    a scramble at this point, right? | **Re: [251:3-251:6]**<br>**Def Objection - Foundation**<br>**(602); Prejudice (403);**<br>**Argumentative (611).** | | | **OVERRULED** |
| **251:10 - 251:11    Myers, Brian 12-12-2019**<br>251 10    A.   Well, Elliott said that he would begin<br>251 11    some testing, if I recall the memo correctly. | **Re: [251:10-251:11]**<br>**Def Objection - Foundation**<br>**(602); Prejudice (403);**<br>**Argumentative (611).** | | | **OVERRULED** |

| | | | |
|---|---|---|---|
| **253:14 - 253:17   Myers, Brian 12-12-2019** | **Re: [253:14-253:17]** | | **OVERRULED** |
| 253 14      You are aware, sir, that after that point<br>253 15      in time, late '99, the technical group to which you<br>253 16      have been referring set about to develop some data<br>253 17      actually on people, right? | Def Objection - Prejudice (403);<br>Foundation (602); Vague,<br>Ambiguous (611, 403); (611) | | |
| **253:21 - 253:24   Myers, Brian 12-12-2019** | **Re: [253:21-253:24]** | | **OVERRULED** |
| 253 21      Q.   With the Combat Arms?<br>253 22      A.   So in November of '99 Elliott wrote:<br>253 23      "Therefore, we will begin conducting REAT<br>evaluations<br>253 24      in the near future on both ends of the plug." | Def Objection - Prejudice (403);<br>Foundation (602); Vague,<br>Ambiguous (611, 403); (611) | | |
| **264:12 - 264:14   Myers, Brian 12-12-2019** | **Re: [264:12-264:14]** | **Re: [264:12-<br>264:14]** | |
| 264 12      Q.   So some studies are done, some tests are<br>264 13      done on these devices, and you've got some real<br>264 14      problems, right? | Def Objection - Foundation<br>(602); Prejudice (403); (611). | Def Objection -<br>Foundation<br>(602); Prejudice<br>(403); (611).<br>**OVERRULED** | |
| **264:21 - 264:21   Myers, Brian 12-12-2019** | **Re: [264:21-264:21]** | **Re: [264:21-<br>264:24]** | |
| 264 21      A.   There were some technical concerns. | Def Objection - Foundation<br>(602); Prejudice (403); (611). | Def Objection -<br>Foundation<br>(602); Prejudice<br>(403); (611).<br>**OVERRULED** | |
| **266:12 - 266:16   Myers, Brian 12-12-2019** | **Re: [266:12-266:21]** | **Re: [266:12-<br>266:21]** | |
| 266 12      Q.   This is Exhibit 22 to your deposition,<br>266 13      sir.  And so this is fast forward from that late<br>266 14      November timeline where you had no data to the<br>period<br>266 15      of time six months later that now you do have some<br>266 16      data, right? | Def Objection - Misstates (611,<br>403); 602; 403. | Def Objection -<br>Misstates (611,<br>403); 602; 403.<br>**OVERRULED** | |
| **266:21 - 268:1   Myers, Brian 12-12-2019** | **Re: [266:12-266:21]** | **Re: [266:12-<br>266:21]** | **Re: [266:23-267:23]**<br>403 | **OVERRULED** |
| 266 21      A.   This e-mail is dated May of 2000.<br>266 22      BY MR. BUCHANAN:<br>266 23      Q.   Right.  And it is an e-mail from Elliott<br>266 24      Berger to you, and it says:  "REAT on the combat<br>266 25      arms," right?<br>267 1      A.   That's the subject line. | Def Objection - Misstates (611,<br>403); 602; 403.<br>**Re: [267:24-268:1]**<br>Def Objection - Relevance (401,<br>402); 403. | Def Objection -<br>Misstates (611,<br>403); 602; 403.<br>**OVERRULED** | **Re: [266:23-267:23]**<br>403 | |

| | | |
|---|---|---|
| 267 2    Q.   "Here are data on the UltraFit end of the<br>267 3    combat arms."<br>267 4    UltraFit end of the Combat Arms you've<br>267 5    also seen referred to, the green end, right?<br>267 6    A.   I think that's the end he is talking<br>267 7    about.<br>267 8    Q.   Okay.  I'd like to focus, please, on<br>267 9    the -- the last sentence here.<br>267 10    Mr. Berger said:  "The existing product<br>267 11    has problems."<br>267 12    Do you see that?<br>267 13    A.   I do see that -- those words there.<br>267 14    Q.   Okay.  You've deferred a lot throughout<br>267 15    the day to your technical people, right?<br>267 16    A.   They are responsible for all of the<br>267 17    technical aspects.<br>267 18    Q.   And a technical person reached out to you<br>267 19    in May 12 of 2000 and said:  "It looks like the<br>267 20    existing product has problems," right?<br>267 21    A.   Elliott says in his memo:  "It looks like<br>267 22    the existing product has problems unless the user<br>267 23    instructions are revised."<br>267 24    Q.   Right.  Right.  And he tells you something<br>267 25    else.  He said this wasn't the first time you tested<br>268 1    the product, right? | Re: [267:24-<br>268:11]<br>Def Objection -<br>Relevance (401,<br>402); 403.<br>**OVERRULED** | |
| **268:5 - 268:6   Myers, Brian 12-12-2019**<br>268 5    Q.   It wasn't the first REAT study you had<br>268 6    done on the UltraFit end of the Combat Arms, right? | | |
| **268:10 - 268:11   Myers, Brian 12-12-2019**<br>268 10    A.   So in this e-mail it mentions an original<br>268 11    study and a second study. | | |
| **268:14 - 268:14   Myers, Brian 12-12-2019**<br>268 14    A.   If that's what you mean. | | |
| **269:12 - 269:13   Myers, Brian 12-12-2019**<br>269 12    Q.   What was the NRR in the first study that<br>269 13    they stopped at eight, sir? | | |
| **269:17 - 269:18   Myers, Brian 12-12-2019**<br>269 17    A.   If I recall the memo, it said, after eight<br>269 18    subjects it was an 11. | | |

| | | | | |
|---|---|---|---|---|
| **270:1 - 270:2   Myers, Brian 12-12-2019** | | | **Re: [270:1-270:2]** | **SUSTAINED** |
| 270 1        A.   I -- I think there was more to this | | | improper counter; not | |
| 270 2        document than just this, but... | | | responsive to any question | |
| **272:18 - 272:23   Myers, Brian 12-12-2019** | | | | |
| 272 18      Q.   I'm going to pass you, sir, what we are | | | | |
| 272 19      marking as Exhibit 23 to your deposition. | | | | |
| 272 20      (WHEREUPON, a certain document was | | | | |
| 272 21      marked Brian Myers Deposition Exhibit | | | | |
| 272 22      No. 23, for identification, as of | | | | |
| 272 23      12/12/2019.) | | | | |
| **273:19 - 274:13    Myers, Brian 12-12-2019** | **Re: [273:19-274:13]** | **Re: [273:19-** | | |
| 273 19      Q.   That's a memo from Mr. Kieper to | Def Objection - Foundation | **274:13]** | | |
| 273 20      Mr. Berger? | (602); Prejudice (403) | Def Objection - | | |
| 273 21      A.   It is, dated May the 11th, 2000. | | Foundation | | |
| 273 22      Q.    And is that consistent with your | | (602); Prejudice | | |
| 273 23      recollection, sir, when you became aware of the | | (403) | | |
| REAT | | **OVERRULED** | | |
| 273 24      testing with the Combat Arms? | | | | |
| 273 25      A.   I don't have specific recollection of | | | | |
| 274 1       those dates. | | | | |
| 274 2       Q.   Okay.  "The initial test 213015 was | | | | |
| 274 3       stopped after eight subjects because the results were | | | | |
| 274 4       variable and the NRR was quite low." | | | | |
| 274 5       Did I read that correctly? | | | | |
| 274 6       A.   "The initial" -- yes.  It says: "The | | | | |
| 274 7       initial test 213015 was stopped after eight subjects | | | | |
| 274 8       because the results were variable and the NRR was | | | | |
| 274 9       quite low (11)." | | | | |
| 274 10      Q.   And you would agree, sir, that an NRR of | | | | |
| 274 11      11 is quite low for a product designed to provide | | | | |
| 274 12      continuous hearing protection in the environments | | | | |
| you | | | | |
| 274 13      were targeting for this use? | | | | |
| **274:17 - 274:23    Myers, Brian 12-12-2019** | **Re: [274:17-274:23]** | **Re: [274:17-** | | |
| 274 17      A.   So I couldn't speak to what customers | Def Objection - Foundation | **274:23]** | | |
| 274 18      needed in terms of that, but clearly he is raising | (602); Prejudice (403) | Def Objection - | | |
| 274 19      this -- this issue as a technical concern. | | Foundation | | |
| 274 20      BY MR. BUCHANAN: | | (602); Prejudice | | |
| 274 21      Q.   Do you have that concern, sir, that an 11 | | | | |

| | | | |
|---|---|---|---|
| 274 22<br>274 23 | would be too low for a product designed to provide<br>continuous protection from noise? | (403)<br>**OVERRULED** | |
| **275:1 - 275:6   Myers, Brian 12-12-2019**<br>275 1      A.   Yeah, I'm not sure I'd share that concern<br>275 2      unless technical called it out as a concern, which<br>275 3      they did.<br>275 4      BY MR. BUCHANAN:<br>275 5      Q.   Okay.  So you'd agree, sir, that that 11<br>275 6      is a problem, right? | **Re: [275:1-275:6]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | **Re: [275:1-<br>275:6]**<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** | |
| **275:10 - 275:11   Myers, Brian 12-12-2019**<br>275 10      A.   Technical raised it as a technical<br>275 11      concern. | **Re: [275:10-275:11]**<br>Def Objection - Foundation<br>(602); Ambiguous (611, 4-03);<br>Prejudice (403) | **Re: [275:10-<br>275:11]**<br>Def Objection -<br>Foundation<br>(602);<br>Ambiguous<br>(611, 4-03);<br>Prejudice (403)<br>**OVERRULED** | |
| **276:17 - 276:22   Myers, Brian 12-12-2019**<br>276 17      Q.   You don't remember technical asking you<br>276 18      that question, will this NRR work?<br>276 19      A.   Are we talking about the Combat Arms<br>276 20      Earplug now?<br>276 21      Q.   No.  We are talking about with passive<br>276 22      hearing protection, sir. | | **Re: [276:17-276:22]**<br>403 | **OVERRULED** |
| **277:1 - 277:2   Myers, Brian 12-12-2019**<br>277 1      A.   I don't recall that, any question like<br>277 2      that specifically. | | **Re: [277:1-277:2]**<br>403 | **OVERRULED** |
| **277:9 - 277:23   Myers, Brian 12-12-2019**<br>277 9      Q.   I am passing you, sir, what we are marking<br>277 10      as 24 to your deposition.  It is P1377, alternately<br>277 11      labeled.<br>277 12      It is an e-mail from 2007 from Jeff Hamer<br>277 13      to Elliott Berger and Ron Kieper.<br>277 14      Do you see that?<br>277 15      A.   I do see that.<br>277 16      Q.   And there is an exchange going on here.<br>277 17      Do you see that, beginning at the bottom<br>277 18      between Mr. Kieper and others? | | **Re: [277:9-277:23]**<br>improper counter | **SUSTAINED** |

| | | | | |
|---|---|---|---|---|
| 277 19    A.   I see Ron Kieper wrote something<br>277 20    June 21st, 2007, Jeff Hamer June 22nd, it looks like I<br>277 21    wrote something -- it is hard to follow -- June 22nd,<br>277 22    and then, finally, in the e-mail stream Jeff Hamer<br>277 23    wrote something June 22nd. | | | | |
| **278:19 - 279:19   Myers, Brian 12-12-2019** | | | **Re: [278:19-279:19]**<br>3M MIL 18; 401; 403 | **OVERRULED** |
| 278 19    Q.   Okay.  We see Jeff Hamer, and what's his<br>278 20    role at this point in time, sir?<br>278 21    A.   I -- I've only ever known Jeff as the<br>278 22    technical manager.<br>278 23    Q.   Okay.  Technical manager of the lab?<br>278 24    A.   Of all technical, including the lab.<br>278 25    Q.   Okay.  Senior to Mr. Berger?<br>279 1    A.   I think he probably would have been<br>279 2    Mr. Berger's supervisor.<br>279 3    Q.   Okay.  Mr. Hamer comments:  "Well...NRR is<br>279 4    pretty low at 9 dBs...acceptable??" with a question<br>279 5    mark.<br>279 6    Do you see that?<br>279 7    A.   I do see that Jeff made that comment.<br>279 8    Q.   And by 6 --<br>279 9    A.   Or asked that question.<br>279 10    Q.   By 6/22/2007 at 8:03 a.m., that's<br>279 11    15 minutes later, 16 minutes later, something like<br>279 12    that, you've captured this question and you say what,<br>279 13    sir?<br>279 14    A.   I -- I wrote:  "Doubt it.  Could you have<br>279 15    one of your engineers take a look at the attachment<br>279 16    mechanism and imagine how we might be able to include<br>279 17    a small foam grommet or other item to block the<br>279 18    opening at the tube attachment point so that we might<br>279 19    be able to get better attenuation?" | | | | |
| **280:1 - 280:11   Myers, Brian 12-12-2019** | | | **Re: [280:1-280:10]**<br>3M MIL 18; 401; 403; 602 | **OVERRULED** |
| 280 1    Q.   Mr. Hamer asks you about the NRR, right?<br>280 2    A.   Again, hard to follow, but I've replied<br>280 3    to:  "Well...NRR is pretty low at 9 dB...acceptable??"<br>280 4    Q.   And your first sentence is what, sir? | | | | |

| | | | | |
|---|---|---|---|---|
| 280 5<br>280 6<br>280 7<br>280 8<br>280 9<br>280 10<br>280 11 | A.   "Doubt it."<br>Q.   Okay.  And then this looks like it was<br>a -- and then there is a further response from<br>Mr. Hamer saying, hmm:  "In hind sight, we probably<br>should have gone 5 subjects and produced an interim<br>report."<br>Right? | | | |
| **280:14 - 280:21   Myers, Brian 12-12-2019** | | | | |
| 280 14<br>280 15<br>280 16<br>280 17<br>280 18<br>280 19<br>280 20<br>280 21 | A.   So I see that on this e-mail chain.<br>BY MR. BUCHANAN:<br>Q.   Right.<br>A.   I'm not sure I was copied on that.  But --<br>Q.   So 9 dB --<br>A.   -- it's hard to tell.<br>Q.   9 dB, at least in this circumstance, is<br>not acceptable, right? | | **Re: [280:14-280:14]**<br>3M MIL 18; 401; 403; 602<br>**Re: [280:17-280:21]**<br>3M MIL 18; 401; 403; 602 | **OVERRULED** |
| **280:24 - 280:24   Myers, Brian 12-12-2019** | | | | |
| 280 24 | A.   That was the comment that I made. | | | **Re: [280:24-280:24]**<br>3M MIL 18; 401; 403; 602 | **OVERRULED** |
| **281:25 - 282:9   Myers, Brian 12-12-2019** | | | | |
| 281 25<br>282 1<br>282 2<br>282 3<br>282 4<br>282 5<br>282 6<br>282 7<br>282 8<br>282 9 | Q.   Okay.  And I'm asking you, sir, because<br>you were looped in on this, correct?<br>A.   I was copied on this, on this memo from<br>Ron to Elliott.<br>Q.   Did you have any reason to disagree with<br>them, sir, that an 11 NRR was unacceptable?<br>A.   I don't know.  It was a technical concern<br>that was raised.<br>Q.   And the technical concern was they don't<br>stay in the ears, stay sealed, right? | **Re: [281:25-282:9]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | Re: [281:25-282:9]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** | |
| **282:14 - 282:24   Myers, Brian 12-12-2019** | | | | |
| 282 14<br>282 15<br>282 16<br>282 17<br>282 18<br>282 19<br>282 20<br>282 21<br>282 22 | A.   So what Ron says is he was concerned<br>because the results were variable and the NRR was<br>quite low.<br>BY MR. BUCHANAN:<br>Q.   Oh, I'm sorry, sir.  Do you see the next<br>paragraph where he now said:  "It was difficult to fit<br>the plug deeply into some subjects earcanals<br>especially those subjects with medium and larger<br>earcanals." | **Re: [282:14-282:24]**<br>Def Objection - Foundation<br>(602); Prejudice (403); (611,<br>403) | Re: [282:14-283:15]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403); (611,<br>403)<br>**OVERRULED** | |

| | | | | |
|---|---|---|---|---|
| 282 23     Did I read that correctly, sir?<br>282 24         A.   Yeah, that's what the document says. | | | | |
| **283:22 - 284:5   Myers, Brian 12-12-2019**<br>283 22         Q.   And I'm just trying to understand that,<br>283 23     sir, because from a marketing perspective, it is not<br>283 24     just a technical concern if your product doesn't<br>283 25     provide protection, it's a sales concern if your<br>284 1     product doesn't provide protection, right?  Can we<br>284 2     agree on that?<br>284 3         A.   Well, he has raised it as a technical<br>284 4     concern.  I saw it as a technical issue that they<br>284 5     needed to -- to resolve or take action on. | **Re: [283:22-284:5]**<br>Def Objection - Foundation<br>(602); ambiguous (611, 403);<br>Prejudice (403) | Re: [283:19-<br>284:11]<br>Def Objection -<br>Foundation<br>(602);<br>ambiguous (611,<br>403); Prejudice<br>(403)<br>**OVERRULED** | | |
| **284:20 - 284:24   Myers, Brian 12-12-2019**<br>284 20         Q.   Tell us what you did, sir.  Tell us what<br>284 21     you did when you found out that your technical team<br>284 22     was telling you that it appeared your product had<br>284 23     problems.  I'd like to know what Brian Myers did.<br>284 24         A.   I don't clearly recall what I did. | **Re: [284:20-285:24]**<br>Def Objection - Foundation<br>(602); Prejudice (403); Attorney<br>Commentary; argumentative;<br>misstates evidence (611, 403) | Re: [284:16-<br>285:3]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403); Attorney<br>Commentary;<br>argumentative;<br>misstates<br>evidence (611,<br>403)<br>**SUSTAINED<br>as to "I'd like<br>to know what<br>Brian Myers<br>did." Otherwise<br>OVERRULED.**<br>Re: [285:8-<br>285:13]<br>Def Objection -<br>407<br>**OVERRULED** | | |
| **287:4 - 287:16   Myers, Brian 12-12-2019**<br>287 4         Q.   Okay.  And he had asked you for permission<br>287 5     before he shared this information with the<br>Department<br>287 6     of Defense, right? | | | Re: [287:4-287:8]<br>401; 403 | **OVERRULED** |

| | | | |
|---|---|---|---|
| 287 7   A.   So that is the question that he asks me in<br>287 8   this memo.<br>287 9   Q.   Right.  And you didn't talk to Dr. Ohlin,<br>287 10   right?<br>287 11   A.  I don't recall.<br>287 12   Q.   You don't recall having any conversation<br>287 13   yourself with Dr. Ohlin, do you, sir?<br>287 14   A.   Not on this matter, no.<br>287 15   Q.   You don't recall ever transmitting him --<br>287 16   to him the flange report, correct? | | | |
| **287:19 - 287:20   Myers, Brian 12-12-2019**<br>287 19   A.  I don't -- I don't recall communicating<br>287 20   with Dr. Ohlin on this. | | | |
| **288:23 - 289:11   Myers, Brian 12-12-2019**<br>288 23   Q.   Okay.  And we could agree, sir, that you<br>288 24   did not tell Dr. Ohlin that these Combat Arms<br>288 25   Version 2, you've got to be really careful with them,<br>289 1   real careful, because they can loosen, you lose the<br>289 2   seal sometimes imperceptibly on subjects.<br>289 3   We could agree you never said that to<br>289 4   Dr. Ohlin, right?<br>289 5   A.   I do not recall communicating with<br>289 6   Dr. Ohlin about this issue.<br>289 7   Q.   Okay.  And we can agree you have not seen<br>289 8   a document from your company where you shared with the<br>289 9   military that if you used these Combat Arms in this<br>289 10   way, that the plugs could loosen, sometimes<br>289 11   imperceptibly to the subjects, right, sir? | **Re: [288:23-289:11]**<br>Def Objection - Prejudice (403); (611); Ambiguous; Misstates, cumulative (611, 403) | Re: [288:23-289:11]<br>Def Objection - Prejudice (403); (611); Ambiguous; Misstates, cumulative (611, 403)<br>**OVERRULED** | |
| **289:15 - 289:16   Myers, Brian 12-12-2019**<br>289 15   A.   I have not seen a document where we<br>289 16   communicated with the military on this issue. | **Re: [289:15-289:16]**<br>Def Objection - Prejudice (403); (611); Ambiguous; Misstates, Cumulative (611, 403) | Re: [289:15-289:16]<br>Def Objection - Prejudice (403); (611); Ambiguous; Misstates, Cumulative (611, 403)<br>**OVERRULED** | |

| 289:18 - 289:20 Myers, Brian 12-12-2019 | | | | |
|---|---|---|---|---|
| 289 18      Q.   And you can agree, sir, that you have not<br>289 19      seen a document where you replied to Elliott Berger<br>289 20      and said, Sure, share the information with Doug? | | | | |
| **289:24 - 290:2   Myers, Brian 12-12-2019** | | | | |
| 289 24      A.   I -- I have not seen such a document, but<br>289 25      consistent with my disposition, I would like to<br>290 1      believe that I would have said, Please share the data<br>290 2      and try to resolve the -- the technical concern. | | | | |
| **290:4 - 290:5   Myers, Brian 12-12-2019**<br>290 4      Q.   And I'm sure you'd like to believe that,<br>290 5      sir, because this is quite a problem now, isn't it? | **Re: [290:4-290:5]**<br>Def Objection - (611); Prejudice<br>(403); Cumulative (403). | | | **OVERRULED** |
| **290:9 - 290:19   Myers, Brian 12-12-2019**<br>290 9      A.   So there is clearly a technical concern<br>290 10      here.<br>290 11      BY MR. BUCHANAN:<br>290 12      Q.   What your technical people called a<br>290 13      problem, right?<br>290 14      A.   Elliott said: "It looks like the existing<br>290 15      product has problems unless the user instructions are<br>290 16      revised." That's what his memo says.<br>290 17      Q.   And he says: "Should I share this with<br>290 18      Ohlin," right?<br>290 19      A.   He does ask that question. | **Re: [290:9-290:11]**<br>Def Objection - (611); Prejudice,<br>Cumulative (403) | | **Re: [290:17-290:19]**<br>403; cumulative | **OVERRULED** |
| **296:2 - 296:3   Myers, Brian 12-12-2019**<br>296 2      Q.   Did anybody share that with the military,<br>296 3      sir? | **Re: [296:2-296:3]**<br>Def Objection - (611); Prejudice<br>(403); Cumulative (403). | Re: [296:2-<br>296:3]<br>Def Objection -<br>(611); Prejudice<br>(403);<br>Foundation<br>(602);<br>Cumulative<br>(403),<br>**OVERRULED** | | |
| **296:7 - 296:9   Myers, Brian 12-12-2019**<br>296 7      A.   I don't know of any document that<br>296 8      communicated this -- this technical concern to -- to<br>296 9      the US military. | **Re: [296:7-296:9]**<br>Def Objection - (611); Prejudice<br>(403); Foundation (602);<br>Cumulative (403). | Re: [296:7-<br>296:9]<br>Def Objection -<br>(611); Prejudice<br>(403); | | |

| | | | |
|---|---|---|---|
| | | Foundation (602); Cumulative (403). **OVERRULED** | | |
| **298:8 - 298:16   Myers, Brian 12-12-2019** | | | |
| 298 8    Q.   Right.  And wouldn't you want a product<br>298 9    that doesn't imperceptibly loosen, loosen, being used<br>298 10    in that environment?  You don't want the hearing<br>298 11    protection to loosen on its own, right?<br>298 12    A.   Again, the U.S. military would have<br>298 13    selected the product that they were to use, and I<br>298 14    have -- have not been able to find any -- I -- I don't<br>298 15    know of any communication from us to the U.S. military<br>298 16    about this technical concern. | | | |
| **300:19 - 300:20   Myers, Brian 12-12-2019** | | Re: [300:19-300:20]<br>Vague; Ambiguous; 403 | **OVERRULED** |
| 300 19    Q.   Because we know that this report, this<br>300 20    information is a pretty big deal, don't we, sir? | | | |
| **300:23 - 300:25   Myers, Brian 12-12-2019** | | Re: [300:23-300:25]<br>Vague; Ambiguous; 403 | **OVERRULED** |
| 300 23    A.   Well, Elliott and -- and Ron certainly<br>300 24    thought it was enough of a technical concern to bring<br>300 25    it forward. | | | |
| **302:18 - 302:21   Myers, Brian 12-12-2019** | | Re: [302:18-302:21]<br>3M MIL 18; 403; 602; 401 | **OVERRULED** |
| 302 18    Q.   You have never seen that study or a<br>302 19    finding of an NRR of 11, terminated study and the<br>302 20    reasons for that outside the walls of Aearo and 3M,<br>302 21    right? | | | |
| **302:24 - 302:24   Myers, Brian 12-12-2019** | | Re: [302:24-302:24]<br>3M MIL 18; 403; 602; 401 | **OVERRULED** |
| 302 24    A.   I have not seen that. | | | |
| **303:23 - 304:2   Myers, Brian 12-12-2019** | | | |
| 303 23    Q.   And with regard to the yellow end, sir,<br>303 24    when the yellow end was tested in the ear to figure<br>303 25    out the attenuation on the nonlinear side, were the<br>304 1    green flanges folded back or not?<br>304 2    A.   I do not know. | | | |
| **308:22 - 308:24   Myers, Brian 12-12-2019** | | | |
| 308 22    Q.   Okay.  And it's your understanding, sir, | | | |

| | | | | |
|---|---|---|---|---|
| 308 23<br>308 24 | that's how users were guided with regard to the<br>instructions and the insertion of the device, fair? | | | | |
| **309:2 - 309:6** | **Myers, Brian 12-12-2019** | | | | |
| 309 2 | BY THE WITNESS: | | | | |
| 309 3 | A.   So I -- again, we provided instructions, | | | | |
| 309 4 | but training is -- is also provided and -- and I think | | | | |
| 309 5 | pretty critical, so. | | | | |
| 309 6 | BY MR. BUCHANAN: | | | | |
| **314:24 - 316:9** | **Myers, Brian 12-12-2019** | **Re: [314:24-316:9]**<br>**Def Objection - Foundation**<br>**(602); Prejudice (403)** | | | **OVERRULED** |
| 314 24 | Q.   Okay.  And what he writes under Test | | | | |
| 314 25 | Procedure:  "For test 213015 the plugs were fit | | | | |
| 315 1 | according to the standard plug's fitting instruction | | | | |
| 315 2 | with no modifications.  Because the stem of the | | | | |
| green, | | | | | |
| 315 3 | solid end of the plug is so short, it was difficult | | | | |
| 315 4 | for the experimenter to insert the plug deeply into | | | | |
| 315 5 | some subjects' earcanals, especially those subjects | | | | |
| 315 6 | with" what? | | | | |
| 315 7 | A.   Do you want me to read from the document? | | | | |
| 315 8 | Q.   Yes. | | | | |
| 315 9 | A.   "With medium and larger earcanals." | | | | |
| 315 10 | Q.   "Medium and larger earcanals." | | | | |
| 315 11 | Do you know what percentage of the | | | | |
| 315 12 | population that represents, sir? | | | | |
| 315 13 | A.   I don't. | | | | |
| 315 14 | Q.   It is stated:  "Additionally, the geometry | | | | |
| 315 15 | of the ear canal opening sometimes prevented the | | | | |
| deep | | | | | |
| 315 16 | plug insertion required for maximum attenuation | | | | |
| 315 17 | values." | | | | |
| 315 18 | Did I read that correctly? | | | | |
| 315 19 | A.   Yes, I see those words in the document. | | | | |
| 315 20 | Q.   "When the solid plug was fitted during the | | | | |
| 315 21 | first test," which it lists as 015, "the basal edge of | | | | |
| 315 22 | the third flange of the yellow, level-dependent plug | | | | |
| 315 23 | sometimes pressed against the subject's ear canal | | | | |
| 315 24 | opening and folded up." | | | | |
| 315 25 | Did I read that correctly? | | | | |
| 316 1 | A.   Yes, those are the words in the document. | | | | |

| | | | | |
|---|---|---|---|---|
| 316 2   Q.   "When the inward pressure on the plug<br>316 3   released, the yellow plug's flanges tended to return<br>316 4   to their original shape and this sometimes loosened<br>316 5   the plug, often imperceptibly to the subject."<br>316 6   Did I read that correctly?<br>316 7   A.   Yes, those words are in this document.<br>316 8   Q.   We could agree, sir, that imperceptible<br>316 9   loosening is not a good thing for an earplug, right? | | | | |
| **316:12 - 316:16   Myers, Brian 12-12-2019**<br>316 12   A.   It was clearly a technical concern he<br>316 13   brought forward.<br>316 14   BY MR. BUCHANAN:<br>316 15   Q.   Well, certainly he was concerned and<br>316 16   terminated the study, right? | **Re: [316:12-316:13]**<br>Def Objection - Foundation<br>(602); Prejudice (403); Vague;<br>Ambiguous (611, 403)<br>**Re: [316:15-316:16]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | Re: [316:12-<br>316:13]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403); Vague;<br>Ambiguous<br>(611, 403)<br>**OVERRULED**<br>Re: [316:15-<br>316:16]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** | | |
| **316:20 - 316:25   Myers, Brian 12-12-2019**<br>316 20   A.   Well, I'm just trying to make sense of it<br>316 21   between the memo and the -- and the -- and the<br>316 22   document.  So, yes, 213015 was the -- the initial test<br>316 23   that was stopped after eight subjects because the<br>316 24   results were variable and the NRR was quite low<br>316 25   according to the memo from Ron to Elliott. | **Re: [316:20-316:25]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | Re: [316:20-<br>316:25]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403)<br>**OVERRULED** | | |
| **321:7 - 321:9   Myers, Brian 12-12-2019**<br>321 7   Q.   Okay.  Fair to say, sir, that you're not<br>321 8   disagreeing with his conclusion that an NRR of 11 for<br>321 9   this product is quite low? | **Re: [321:7-321:9]**<br>Def Objection - Foundation<br>(602); Prejudice (403); Asked<br>and answered; Vague (611,<br>403); Cumulative (403). | Re: [321:7-<br>321:9]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403); Asked<br>and answered;<br>Vague (611, | | |

| | | | | |
|---|---|---|---|---|
| | | 403); Cumulative (403). **OVERRULED** | | |
| **321:12 - 321:14   Myers, Brian 12-12-2019**<br>321 12  A.  I'm not disagreeing with his -- with his<br>321 13  conclusion.  He also said the results were variable as<br>321 14  well. | Re: [321:12-321:14]<br>Def Objection - Foundation (602); Prejudice (403); Asked and answered; Vague (611, 403); Cumulative (403). | Re: [321:12-321:18]<br>Def Objection - Foundation (602); Prejudice (403); Asked and answered; Vague (611, 403); Cumulative (403). **OVERRULED** | | |
| **322:20 - 322:25   Myers, Brian 12-12-2019**<br>322 20  Your understanding, sir, when they did<br>322 21  test 017, the study ending in 017, which is the<br>322 22  retest, what Mr. Kieper did, as described in his<br>322 23  report, is they flipped back the flanges on the yellow<br>322 24  end when they were testing the amount of attenuation<br>322 25  provided by the green end, is that right? | Re: [322:20-322:25]<br>Def Objection - Foundation (602); Prejudice (403); Misstates evidence (611, 403) | Re: [322:20-322:25]<br>Def Objection - Foundation (602); Prejudice (403); Misstates evidence (611, 403) **OVERRULED** | | |
| **323:4 - 323:7   Myers, Brian 12-12-2019**<br>323 4  A.  So -- so in Exhibit 23 he says:  "For test<br>323 5  213017, the yellow flanges," which I think is the way<br>323 6  you have it, "of the Combat Arms end of the plug<br>were<br>323 7  folded back prior to the plug being fit." | Re: [323:4-323:7]<br>Def Objection - Foundation (602); Prejudice (403); (611, 403). | Re: [323:4-323:11]<br>Def Objection - Foundation (602); Prejudice (403); (611, 403). **OVERRULED** | | |
| **323:9 - 323:11   Myers, Brian 12-12-2019**<br>323 9  Q.  Okay.  How was the yellow end tested?<br>323 10  A.  He -- he doesn't -- he doesn't say here in<br>323 11  the memo.  I don't know if that's in this report. | | | Re: [323:9-323:11]<br>improper counter | **SUSTAINED** |
| **323:19 - 323:21   Myers, Brian 12-12-2019**<br>323 19  Q.  Did -- did Mr. Kieper fold back the green | | | Re: [323:19-323:21]<br>improper counter | **SUSTAINED** |

| | | | | |
|---|---|---|---|---|
| 323 20   end when he was testing the yellow end?<br>323 21       A.   I don't know. | | | | |
| **323:22 - 323:24   Myers, Brian 12-12-2019**<br>323 22       Q.   And wouldn't you agree, sir, that if<br>323 23   folding back the flanges is the right way to test the<br>323 24   product, you should test both ends the same way? | **Re: [323:22-323:24]**<br>Def Objection - Foundation (602); Prejudice (403); (611, 403). | Re: [323:19-323:24]<br>Def Objection - Foundation (602); Prejudice (403); (611, 403).<br>**OVERRULED** | | |
| **324:3 - 324:3   Myers, Brian 12-12-2019**<br>324 3       A.   That would be up to the technical group. | **Re: [324:3-324:3]**<br>Def Objection - Foundation (602); Prejudice (403); Misstates evidence (611, 403). | Re: [324:3-324:3]<br>Def Objection - Foundation (602); Prejudice (403); Misstates evidence (611, 403).<br>**OVERRULED** | | |
| **328:9 - 328:10   Myers, Brian 12-12-2019**<br>328 9       MR. BUCHANAN:  I'd like to play, please, the<br>328 10   clip, Page 165, Line 20 to Page 166, Line 1. | | | | |
| **328:13 - 328:13   Myers, Brian 12-12-2019**<br>328 13       A.   I'm sorry, I can't understand that. | | | | |
| **329:1 - 329:2   Myers, Brian 12-12-2019**<br>329 1       Q.   On the screen, sir, is that Mr. Hamer?<br>329 2       A.   That is Jeff Hamer. | | | **Re: [329:1-329:7]**<br>403; 401; cumulative | **OVERRULED** |
| **329:3 - 329:7   Myers, Brian 12-12-2019**<br>329 3       Q.   You said he had responsibility for all of<br>329 4   the lab?<br>329 5       A.   He is the technical manager for hearing<br>329 6   protection, so I believe the lab falls under his<br>329 7   responsibility today. | | | **Re: [329:1-329:7]**<br>403; 401; cumulative | **OVERRULED** |
| **331:22 - 332:14   Myers, Brian 12-12-2019**<br>331 22       Q.   And we are looking at the bottom.  All<br>331 23   right.  And I'll rep -- I'll now read to you, sir, the<br>331 24   sworn testimony of Mr. Hamer from a few years<br>back. | **Re: [331:22-332:14]**<br>Def Objection - Foundation (602); Prejudice (403); Hearsay (802). | Re: [331:22-332:14]<br>Def Objection - Foundation (602); Prejudice | **Re: [331:22-332:10]**<br>3M MIL 6 | **OVERRULED** |

| | | | |
|---|---|---|---|
| 331 25  "Would it be fair to say that if they did<br>332 1  not test the open mode with the flange rolled back,<br>332 2  but they did test the closed end with the flange<br>332 3  rolled back, that that would be improper because the<br>332 4  two tests were using the product in two different<br>332 5  ways?"<br>332 6  His answer:<br>332 7  "My opinion is that testing the product<br>332 8  with the flanges rolled back is improper."<br>332 9  Did I read that correctly, sir?<br>332 10  A.  Yes, I think you did.<br>332 11  Q.  And you've talked about how you deferred<br>332 12  to technical folks throughout today, sir.  I take it<br>332 13  you defer to Mr. Hamer on what the proper way is to<br>332 14  test the product that has two ends, right? | | (403); Hearsay<br>(802).<br>**OVERRULED** | |
| **332:17 - 332:20   Myers, Brian 12-12-2019**<br>332 17  A.  He is the technical manager, yes.<br>332 18  BY MR. BUCHANAN:<br>332 19  Q.  And you don't dispute his view of what's<br>332 20  improper, do you, sir? | Re: [332:17-332:20]<br>Def Objection - Foundation<br>(602); Prejudice (403); Vague;<br>Ambiguous (611, 403); Hearsay<br>(802). | Re: [332:17-332:20]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403); Vague;<br>Ambiguous<br>(611, 403);<br>Hearsay (802).<br>**OVERRULED** | |
| **332:23 - 332:24   Myers, Brian 12-12-2019**<br>332 23  A.  No.  It's a -- it's a technical -- it's a<br>332 24  technical issue. | Re: [332:23-332:24]<br>Def Objection - Foundation<br>(602); Prejudice (403); Vague;<br>Ambiguous (611, 403); Hearsay<br>(802). | Re: [332:23-332:24]<br>Def Objection -<br>Foundation<br>(602); Prejudice<br>(403); Vague;<br>Ambiguous<br>(611, 403);<br>Hearsay (802).<br>**OVERRULED** | |
| **335:6 - 335:9   Myers, Brian 12-12-2019**<br>335 6  Q.  You'd agree that exposure to this flange<br>335 7  report could lead to some pretty significant actions | Re: [335:6-335:9]<br>Def Objection - Prejudice (403);<br>(611); Ambiguous (611, 403) | Re: [335:6-335:9]<br>Def Objection -<br>Prejudice (403); | Re: [335:6-335:9]<br>Baker MIL 1 | **OVERRULED** |

| | | | |
|---|---|---|---|
| 335 8   when a manufacturer is exposed to it, right?<br>335 9      A.   I don't know what actions could result. | | (611);<br>Ambiguous<br>(611, 403)<br>**OVERRULED** | |
| **340:2 - 340:13   Myers, Brian 12-12-2019**<br>340 2      Q.   And ultimately, sir, that flange report<br>340 3      was shown to Mr. Hamer in his deposition.  You got a<br>340 4      call not too long after that, didn't you?<br>340 5      A.   I don't know.<br>340 6      Q.   Mr. Hamer call you up after his deposition<br>340 7      and ask you what the deal was with the flange report?<br>340 8      A.   I don't recall that.<br>340 9      Q.   Well, didn't you reach a determination,<br>340 10      sir, that you couldn't market this Combat Arms<br>340 11      Version 2 with an NRR of 22 after senior folks in 3M<br>340 12      had been exposed to the flange report?<br>340 13      A.   I -- I don't recall that. | | | Re: [340:2-340:13]<br>Hearsay; privilege; calls for legal conclusion; 403; 407; 3M MIL 16; Baker MIL 1 | **OVERRULED** |
| **344:23 - 345:4   Myers, Brian 12-12-2019**<br>344 23      Q.   And you sold millions of these Combat Arms<br>344 24      Version 2 to the US military and you're not aware of<br>344 25      anyone ever sharing any concern with them about<br>345 1      imperceptible loosening, correct, sir?<br>345 2      A.   I have not been able to find any written<br>345 3      communication from the -- the company to the US<br>345 4      military on this issue. | Re: [344:23-345:4]<br>Def Objection - Foundation (602); Prejudice (403); Vague; Ambiguous (611, 403); Reference to millions of sales not relevant to these plaintiffs; Cumulative (403). | Re: [344:19-345:9]<br>Def Objection - Foundation (602); Prejudice (403); Vague; Ambiguous (611, 403); Reference to millions of sales not relevant to these plaintiffs; Cumulative (403).<br>**OVERRULED** | |
| **345:10 - 345:24   Myers, Brian 12-12-2019**<br>345 10      Q.   Well, ultimately this got back to you,<br>345 11      sir, the day after Mr. Hamer's deposition, didn't it,<br>345 12      this whole flange report issue?<br>345 13      A.   Again, I don't -- I don't recall that. | | | Re: [345:10-345:24]<br>407; 403; MIL 16; Baker MIL 1 | **OVERRULED** |

| | | | | |
|---|---|---|---|---|
| 345 14 | Q.   Okay.  Because the next day, sir, you | | | |
| 345 15 | issued cease shipping orders putting on hold all of | | | |
| 345 16 | the Combat Arms SKUs, didn't you, sir? | | | |
| 345 17 | A.   That timing would be about right. | | | |
| 345 18 | Q.   You have a memory now of that, sir? | | | |
| 345 19 | A.   No.  I -- I remember that we ceased | | | |
| 345 20 | shipping at about that time. | | | |
| 345 21 | Q.   And that was the day after Mr. Hamer's | | | |
| 345 22 | deposition where he saw for the first time the flange | | | |
| 345 23 | report, right? | | | |
| 345 24 | A.   I guess I did not realize that. | | | |

**348:17 - 350:2    Myers, Brian 12-12-2019**

| | |
|---|---|
| 348 17 | Sir, as of October 2015, you had been out |
| 348 18 | of the day-to-day Combat Arms business for some time, |
| 348 19 | true? |
| 348 20 | A.   So I had other people who reported to me |
| 348 21 | who focused on the hearing protection business. |
| 348 22 | Q.   Okay.  And you're the one who is issuing |
| 348 23 | the stop ship order, right? |
| 348 24 | A.   This e-mail is from me, yes. |
| 348 25 | Q.   All right.  Sir, we are now later in |
| 349 1 | October of 2015 and some folks are asking you |
| 349 2 | questions about whether they can still sell Combat |
| 349 3 | Arms for some international orders, right? |
| 349 4 | A.   So, in Ex -- Exhibit 28, I think that was |
| 349 5 | the -- there was a question about Europe. |
| 349 6 | Q.   Okay.  And you've got Exhibit 28 before |
| 349 7 | you here, we are late in October of 2015, and there is |
| 349 8 | a question being raised by folks about whether this |
| 349 9 | product can still be shipped. |
| 349 10 | Do you see that? |
| 349 11 | A.   I was trying to find the exact question. |
| 349 12 | Is there a -- is there a -- a spot in this |
| 349 13 | exhibit with the exact question? |
| 349 14 | Q.   We are just working through our papers |
| 349 15 | here, sir. |
| 349 16 | Let's set that one aside for a moment, |
| 349 17 | sir.  You can set that one aside. |

| | | | | |
|---|---|---|---|---|
| 349 18    A.   Okay. | | | | |
| 349 19    Q.   I marked the wrong one. | | | | |
| 349 20    A.   You are taking a big chance that I'll be | | | | |
| 349 21    able to find it again. | | | | |
| 349 22    Q.   While we are on Exhibit 28, sir, do you | | | | |
| 349 23    see at the top there is an exchange between you and | | | | |
| 349 24    European folks who had responsibility for the Combat | | | | |
| 349 25    Arms or sold or distributed Combat Arms, correct? | | | | |
| 350 1    A.   Di -- Divinder Bains was a product manager | | | | |
| 350 2    in Europe. | | | | |
| **350:3 - 350:18   Myers, Brian 12-12-2019** | | | | |
| 350 3    Q.   Okay.  And he reaches out and says, Hey, | | | | |
| 350 4    we've got an order for 500 cases of these things, | | | | |
| 350 5    right? | | | | |
| 350 6    A.   I see an e-mail from, was that from him, | | | | |
| 350 7    from Liz Chandler, since this request is for Europe, | | | | |
| 350 8    hang on, I'll go on back, there is a person on here I | | | | |
| 350 9    don't know, a couple of people I don't know. | | | | |
| 350 10   Q.   After all of that back and forth, sir -- | | | | |
| 350 11   A.   Sorry. | | | | |
| 350 12   Q.   -- do you see at the top of the first | | | | |
| 350 13   page, you are asked, based on being shown the | | | | |
| 350 14   packaging for the Combat Arms, whether you can ship | | | | |
| 350 15   it, right? | | | | |
| 350 16   And you state at the top:  "Sorry, but we | | | | |
| 350 17   should not ship this product.  I've informed | | | | |
| 350 18   Divinder," correct? | | | | |
| **350:19 - 350:20   Myers, Brian 12-12-2019** | | | | |
| 350 19   A.   I said:  "Sorry, but we should not ship | | | | |
| 350 20   this product.  I have informed Divinder." | | | | |
| **351:3 - 351:5   Myers, Brian 12-12-2019** | **Re: [351:3-351:5]** Def Objection - MIL 16; 407; 401; 402; 403; 611. | | | |
| 351 3    Q.   And this is going on with multiple | | | | |
| 351 4    accounts, right, you all are issuing a stop ship on | | | | |
| 351 5    your Combat Arms in October 2015, is that right, sir? | | | | |
| **351:10 - 351:16   Myers, Brian 12-12-2019** | **Re: [351:10-351:11]** Def Objection - MIL 16; 407; 401; 402; 403; 611. | | **Re: [351:13-351:16]** 407; 403; MIL 16; Baker MIL 1 | **OVERRULED** |
| 351 10   A.   In the e-mail I asked that we cease | | | | |
| 351 11   shipping and put on hold indefinitely those SKUs. | | | | |

| | | | | |
|---|---|---|---|---|
| 351 12 BY MR. BUCHANAN:<br>351 13 Q. Right. In fact, what you did, is you<br>351 14 started cancelling orders, right?<br>351 15 A. I don't know that, but we did cease<br>351 16 shipping it. | | | | |
| 352:16 - 352:22 Myers, Brian 12-12-2019<br>352 16 And you state, carrying over -- and we<br>352 17 set -- see this e-mail on October 31, 2015, and you<br>352 18 state: "Divinder - either way as I explained to you,<br>352 19 we cannot distribute this with the current NRR on the<br>352 20 package."<br>352 21 Did I read that correctly?<br>352 22 A. That's -- those were the words I used. | Re: [352:16-352:22]<br>Def Objection - MIL 16; 407;<br>401; 402; 403. | Re: [352:12-352:22]<br>Def Objection -<br>MIL 16; 407;<br>401; 402; 403.<br>**OVERRULED** | Re: [352:16-352:22]<br>Baker MIL 1 | **OVERRULED** |
| 353:21 - 353:24 Myers, Brian 12-12-2019<br>353 21 Q. It's in fact true, sir, that you were<br>353 22 instructing people not to ship the Combat Arms<br>353 23 Version 2 with the current NRR on the label, correct?<br>353 24 A. Those were the words in that e-mail. | Re: [353:21-353:24]<br>Def Objection - MIL 16; 407;<br>401; 402; 403. | Re: [353:21-353:24]<br>Def Objection -<br>MIL 16; 407;<br>401; 402; 403.<br>**OVERRULED** | Re: [353:21-353:24]<br>Baker MIL 1 | **OVERRULED** |
| 355:12 - 355:13 Myers, Brian 12-12-2019<br>355 12 You couldn't ship the product with a 22,<br>355 13 correct? | | | | |
| 355:16 - 355:21 Myers, Brian 12-12-2019<br>355 16 Q. At least as of this point in time in 2015?<br>355 17 A. So my recollection is that I used the NRR<br>355 18 of 22 as a shorthand for this set of SKUs that I had<br>355 19 communicated that we should no longer ship from --<br>and<br>355 20 I'm sorry -- it was Exhibit 27 I pointed to, and those<br>355 21 are the SKUs that I asked us to stop shipping. | | | | |
| 358:16 - 359:3 Myers, Brian 12-12-2019<br>358 16 Q. You told people that they should dispose<br>358 17 of them, right?<br>358 18 A. I don't recall that.<br>358 19 MR. BUCHANAN: Can I have P899A.<br>358 20 (WHEREUPON, a certain document was<br>358 21 marked Brian Myers Deposition Exhibit<br>358 22 No. 30, for identification, as of<br>358 23 12/12/2019.) | Re: [358:16-359:3]<br>Def Objection - MIL 16; FRE<br>407; Prejudice (403); Relevance<br>(401, 402) | Re: [358:12-359:3]<br>Def Objection -<br>MIL 16; FRE<br>407; Prejudice<br>(403);<br>Relevance (401,<br>402)<br>**OVERRULED** | Re: [358:16-359:3]<br>Baker MIL 1 | **OVERRULED** |

| | | | | |
|---|---|---|---|---|
| 358 24   BY MR. BUCHANAN:<br>358 25      Q.   I'm passing you, sir, what's been marked<br>359 1   as Exhibit 30 to your deposition.  It says that same<br>359 2   re line, this is concerning an order for 500 cases.<br>359 3      That's a pretty good size order, isn't it? | | | | |
| **359:7 - 359:8   Myers, Brian 12-12-2019**<br>359 7      A.   I don't know.  I don't know how big that<br>359 8   order was.  500 cases, I'm not sure. | Re: [359:6-359:8]<br>Def Objection - Prejudice (403);<br>Relevance (401; 402). | Re: [359:6-359:8]<br>Def Objection - Prejudice (403);<br>Relevance (401; 402).<br>**OVERRULED** | Re: [359:6-359:8]<br>Baker MIL 1 | **OVERRULED** |
| **359:25 - 360:8   Myers, Brian 12-12-2019**<br>359 25      Q.   And there is a question from Divinder<br>360 1   Bains:  "Luis, Can we do a phaseout," it is the second<br>360 2   e-mail from the bottom?<br>360 3      A.   I see that e-mail from Divinder Bains:<br>360 4   "Can we do a "phase out" of (370-1011)...and use 3M<br>360 5   Combat Arms 4.1 as new solution.  Thank you."<br>360 6   Is that what you mean?<br>360 7      Q.   That's what I mean.<br>360 8      A.   Okay. | | | | |
| **360:9 - 360:25   Myers, Brian 12-12-2019**<br>360 9      Q.   And then it is being put back to Luis, and<br>360 10   he is asking the question should the stock that we<br>360 11   have here, the 200, I guess pair, should it be<br>360 12   disposed of or can it be sold?<br>360 13   Do you see that question?<br>360 14      A.   I see that question in -- in that e-mail<br>360 15   from November the 3rd.<br>360 16      Q.   And your instruction back to Luis was<br>360 17   what?<br>360 18      A.   My e-mail said:  "Please dispose of them."<br>360 19      Q.   Okay.  And you understood that to mean<br>360 20   destroy them, right?<br>360 21      A.   To get rid of them, yes.<br>360 22      Q.   Throw them away?<br>360 23      A.   Something like that. | Re: [360:16-360:25]<br>Def Objection - MIL 16; 407;<br>403; Relevance (401, 402) | Re: [360:16-360:25]<br>Def Objection - MIL 16; 407;<br>403; Relevance (401, 402)<br>**OVERRULED** | Re: [360:9-361:1]<br>Baker MIL 1 | **OVERRULED** |

| | | | | |
|---|---|---|---|---|
| 360 24<br>360 25 | Q.   Destroy them?<br>A.   Dispose. | | | |
| **361:1 - 361:1**<br>361 1 | **Myers, Brian 12-12-2019**<br>Q.   Make sure they don't get used, right? | **Re: [361:1-361:1]**<br>Def Objection - MIL 16; 407;<br>Prejudice (403); (611)<br>Cumulative (403) | Re: [361:1-361:1]<br>Def Objection - MIL 16; 407;<br>Prejudice (403);<br>(611);<br>Cumulative (403)<br>**OVERRULED** | **Re: [360:9-361:1]**<br>Baker MIL 1 | **OVERRULED** |
| **361:5 - 361:9**<br>361 5<br>361 6<br>361 7<br>361 8<br>361 9 | **Myers, Brian 12-12-2019**<br>A.   Yes, dispose of them.<br>BY MR. BUCHANAN:<br>Q.   And disposing of them, that would mean<br>make sure they don't get used, right?<br>A.   That was my intention. | **Re: [361:5-361:9]**<br>Def Objection - MIL 16; 407;<br>Prejudice (403); (611);<br>Cumulative (403). | Re: [361:5-361:14]<br>Def Objection - MIL 16; 407;<br>Prejudice (403);<br>(611);<br>Cumulative (403).<br>**OVERRULED** | **Re: [361:5-361:9]**<br>Baker MIL 1 | **OVERRULED** |
| **361:23 - 361:25**<br>361 23<br>361 24<br>361 25 | **Myers, Brian 12-12-2019**<br>Q.   You didn't say, We can solve for this<br>internally and just train people up on it, send them<br>back to me, I'll pass them around the office? | **Re: [361:23-361:25]**<br>Def Objection - Prejudice (403);<br>(611); Cumulative (403) | Re: [361:17-361:25]<br>Def Objection - Prejudice (403);<br>(611);<br>Cumulative (403)<br>**SUSTAINED as to 361:23-25. Otherwise OVERRULED.** | | |
| **362:4 - 362:10**<br>362 4<br>362 5<br>362 6<br>362 7<br>362 8<br>362 9<br>362 10 | **Myers, Brian 12-12-2019**<br>Q.   You didn't say that, right?<br>A.   It says:  "Please dispose of them."<br>Q.   Make sure nobody uses them, right?<br>A.   "Please dispose of them."<br>Q.   And so my question to you, sir, is what<br>you are telling folks within 3M, destroy the stock you<br>have of these things, right? | **Re: [362:4-362:7]**<br>Def Objection - Prejudice (403);<br>(611); Cumulative (403) | Re: [362:4-362:7]<br>Def Objection - Prejudice (403);<br>(611);<br>Cumulative (403)<br>**SUSTAINED** | **Re: [362:8-362:10]**<br>MIL 16; 403; vague; ambiguous;<br>407; Baker MIL 1 | **SUSTAINED** |

| | | | | |
|---|---|---|---|---|
| **362:13 - 362:13   Myers, Brian 12-12-2019**<br>362 13      A.   I said:  "Please dispose of them." | | | **Re: [362:13-362:13]**<br>MIL 16; 403; vague; ambiguous; 407; Baker MIL 1 | |
| **362:25 - 363:3   Myers, Brian 12-12-2019**<br>362 25      Q.   When did you tell the military, sir, that,<br>363 1      Hey, you shouldn't use these anymore, the NRR of 22<br>363 2      can't be used with this product?  When did you tell<br>363 3      them that? | **Re: [362:25-363:3]**<br>Def Objection - MIL 16; 407; Prejudice (403); Vague; Ambiguous (611, 403); Cumulative (403) | Re: [362:25-363:3]<br>Def Objection - MIL 16; 407; Prejudice (403); Vague; Ambiguous (611, 403); Cumulative (403)<br>**OVERRULED** | **Re: [363:1-363:3]**<br>Baker MIL 1 | **OVERRULED** |
| **363:7 - 363:16   Myers, Brian 12-12-2019**<br>363 7      A.   Again, I don't know that there was any<br>363 8      announcement or communication on that.<br>363 9      BY MR. BUCHANAN:<br>363 10      Q.   When did you tell all of the people -- and<br>363 11      this had been sold for 15 years, right?<br>363 12      A.   At that point in time, it was about<br>363 13      15 years.<br>363 14      Q.   When did you tell the people about the<br>363 15      problems with these or that the NRR of 22 should<br>not<br>363 16      be assumed for the product? | **Re: [363:7-363:16]**<br>Def Objection - MIL 16; 407; Prejudice (403); Vague; Ambiguous; Cumulative (611, 403) | Re: [363:7-363:16]<br>Def Objection - MIL 16; 407; Prejudice (403); Vague; Ambiguous; Cumulative (611, 403)<br>**OVERRULED** | **Re: [363:7-363:16]**<br>Baker MIL 1 | **OVERRULED** |
| **363:20 - 363:21   Myers, Brian 12-12-2019**<br>363 20      A.   Again, I don't recall any -- any<br>363 21      announcement. | **Re: [363:20-363:21]**<br>Def Objection - MIL 16; 407; Prejudice (403); Vague; Ambiguous; Cumulative (611, 403). | Re: [363:20-363:21]<br>Def Objection - MIL 16; 407; Prejudice (403); Vague; Ambiguous; Cumulative (611, 403).<br>**OVERRULED** | **Re: [363:20-363:21]**<br>Baker MIL 1 | **OVERRULED** |
| **365:18 - 365:20   Myers, Brian 12-12-2019**<br>365 18      You'd agree, sir, that one way in which a<br>365 19      company can communicate product safety concerns | **Re: [365:18-365:20]**<br>Def Objection - MIL 16; 407; Prejudice (403); Vague; | Re: [365:18-365:20]<br>Def Objection - | **Re: [365:18-365:20]**<br>Baker MIL 1 | **OVERRULED** |

| | | | | |
|---|---|---|---|---|
| to its<br>365 20   user base is through a recall, right? | Ambiguous; Cumulative (611, 403) | MIL 16; 407;<br>Prejudice (403);<br>Vague;<br>Ambiguous;<br>Cumulative<br>(611, 403)<br>**OVERRULED** | | **OVERRULED** |
| **365:23 - 365:23   Myers, Brian 12-12-2019**<br>365 23       A.  I suppose that's one way. | Re: [365:23-365:23]<br>Def Objection - MIL 16; 407;<br>Prejudice (403); Vague;<br>Ambiguous; Cumulative (611, 403) | Re: [365:23-365:23]<br>Def Objection -<br>MIL 16; 407;<br>Prejudice (403);<br>Vague;<br>Ambiguous<br>(611, 403)<br>**OVERRULED** | Re: [365:23-365:23]<br>Baker MIL 1 | **OVERRULED** |
| **366:10 - 366:15   Myers, Brian 12-12-2019**<br>366 10       Q.   Okay.  And so at what point in time, sir,<br>366 11       in 2015 or 2016 or 2017 or 2018 or 2019 did the<br>366 12       company communicate to the millions of people or<br>366 13       hundreds of thousands of people in possession of<br>these<br>366 14       that you shouldn't use this with an expectation that<br>366 15       it's going to provide you with an NRR of 22? | Re: [366:10-366:15]<br>Def Objection - Prejudice (403);<br>MIL 16; Cumulative; asked and<br>answered; compound (611, 403) | Re: [366:10-366:15]<br>Def Objection -<br>Prejudice (403);<br>MIL 16;<br>Cumulative;<br>asked and<br>answered;<br>compound (611,<br>403)<br>**OVERRULED** | Re: [366:10-366:15]<br>Baker MIL 1 | **OVERRULED** |
| **366:19 - 367:4   Myers, Brian 12-12-2019**<br>366 19       A.  I don't know that we did.<br>366 20       BY MR. BUCHANAN:<br>366 21       Q.   In fact, you are pretty sure you didn't,<br>366 22       right?<br>366 23       A.   I don't know that we did.<br>366 24       Q.   Well, a recall would be something you<br>366 25       would be made aware of, right, sir?<br>367 1       A.   I would think I would be aware of that.<br>367 2       Q.   I mean, you were a person that was out | Re: [366:19-367:4]<br>Def Objection - Prejudice (403);<br>MIL 16; 407; Cumulative; asked<br>and answered; compound (611,<br>403) | Re: [366:19-367:4]<br>Def Objection -<br>Prejudice (403);<br>MIL 16; 407;<br>Cumulative;<br>asked and<br>answered;<br>compound (611,<br>403)<br>**OVERRULED** | Re: [366:29-367:4]<br>Baker MIL 1 | **OVERRULED** |

| | | | | |
|---|---|---|---|---|
| 367 3   telling people to stop shipping these and destroy<br>367 4   them, right? | | | | |
| **367:7 - 367:7**   **Myers, Brian 12-12-2019**<br>367 7   A.   The language I used was: "Please dispose | Re: [367:7-367:8]<br>Def Objection - MIL 16; 407;<br>Prejudice (403); Cumulative<br>(403). | Re: [367:7-<br>367:19]<br>Def Objection -<br>MIL 16; 407;<br>Prejudice (403);<br>Cumulative<br>(403).<br>**OVERRULED** | Re: [367:7-367:8]<br>Baker MIL 1 | **OVERRULED** |
| **367:11 - 367:18**   **Myers, Brian 12-12-2019**<br>367 11   How about communicating that these<br>367 12   millions of products that are out there in the<br>367 13   marketplace that you are using assuming safety and<br>367 14   protection up to 22 NRR, in fact, can imperceptibly<br>367 15   loosen.<br>367 16   Did you ever make a communication like<br>367 17   that at any point in time?<br>367 18   A.   I don't know. | Re: [367:11-367:18]<br>Def Objection - MIL 16; 407;<br>Prejudice (403); Cumulative<br>(403). | Re: [367:7-<br>367:19]<br>Def Objection -<br>MIL 16; 407;<br>Prejudice (403);<br>Cumulative<br>(403).<br>**OVERRULED** | Re: [367:11-367:18]<br>Baker MIL 1 | **OVERRULED** |
| **367:24 - 367:25**   **Myers, Brian 12-12-2019**<br>367 24   Q.   Are you aware of one, sir?<br>367 25   A.   No, I'm not aware of one. | Re: [367:24-367:25]<br>Def Objection - MIL 16; 407;<br>Vague; Ambiguous (611, 403);<br>Prejudice (403) | Re: [367:22-<br>367:25]<br>Def Objection -<br>MIL 16; 407;<br>Vague;<br>Ambiguous<br>(611, 403);<br>Prejudice (403)<br>**OVERRULED** | Re: [367:24-367:25]<br>Baker MIL 1 | **OVERRULED** |
| **371:15 - 371:25**   **Myers, Brian 12-12-2019**<br>371 15   Q.   Okay. At the point in time when 3M bought<br>371 16   Aearo in 2007-8, you had all of those three things,<br>371 17   right? You had common stock, preferred stock and<br>371 18   options?<br>371 19   A.   I only remember having something that was<br>371 20   called stock or something like that.<br>371 21   Q.   Uh-huh. And when the company sold to 3M<br>371 22   in 2007, 2008, you liquidated your position, right?<br>371 23   A.   I'm not sure I had a choice. I think<br>371 24   that's just what happened when 3M took -- bought | Re: [371:15-371:25]<br>Def Objection - MIL 7;<br>Prejudice (403); Foundation<br>(602); 401; 402; 403. | Re: [370:11-<br>372:6]<br>Def Objection -<br>MIL 7;<br>Prejudice (403);<br>Foundation<br>(602); 401; 402;<br>403.<br>**OVERRULED** | | |

| | | | | |
|---|---|---|---|---|
| the<br>371 25      company. | | | | |
| **372:10 - 372:12   Myers, Brian 12-12-2019** | | | | |
| 372 10      A.   So, having not seen this or -- or being<br>372 11      familiar, that's what you've reflected here in this<br>372 12      document. | | | | |
| **375:19 - 376:5   Myers, Brian 12-12-2019**<br>375 19      Q.   Let me pass you, sir, the press release<br>375 20      that was issued by your company Aearo, February 1,<br>375 21      2006.  It says: "Permira, a leading international<br>375 22      private equity firm, today announced a new holding<br>375 23      company formed by the funds it advises signed a<br>375 24      definitive agreement to acquire Aearo, one of the<br>375 25      world's leading designers, manufacturers and<br>marketers<br>376 1      of a broad range of personal protective products and<br>376 2      energy absorbing composites for approximately<br>376 3      $765 million."<br>376 4      Did I read that correctly?<br>376 5      A.   Those are the words in this press release. | Re: [375:19-376:5]<br>Def Objection - MIL 7;<br>Prejudice (403); Hearsay (801,<br>802); 401; 402; 403. | Re: [375:19-<br>376:5]<br>Def Objection -<br>MIL 7;<br>Prejudice (403);<br>Hearsay (801,<br>802); 401; 402;<br>403.<br>**OVERRULED** | Re: [375:19-376:5]<br>Baker MIL 1 | **OVERRULED** |
| **377:8 - 377:10   Myers, Brian 12-12-2019**<br>377 8      Q.   Okay.  And you'd agree with me, sir, that,<br>377 9      what is that, less than two years later, 3M comes in<br>377 10      and 3M buys you all for $1.2 billion, right? | Re: [377:8-377:10]<br>Def Objection - MIL 7; asked<br>and answered (611, 403); 407;<br>Foundation (602); 401; 402;<br>403. | Re: [377:6-<br>377:10]<br>Def Objection -<br>MIL 7; asked<br>and answered<br>(611, 403); 407;<br>Foundation<br>(602); 401; 402;<br>403.<br>**OVERRULED** | Re: [377:8-377:10]<br>Baker MIL 1 | **OVERRULED** |
| **377:14 - 377:15   Myers, Brian 12-12-2019**<br>377 14      A.   Yes, I think that was announced in 2007<br>377 15      and ultimately they bought us in 2008, so... | Re: [377:14-377:15]<br>Def Objection - MIL 7;<br>Foundation (602); 401; 402;<br>403. | Re: [377:14-<br>377:15]<br>Def Objection -<br>MIL 7;<br>Foundation<br>(602); 401; 402;<br>403.<br>**OVERRULED** | Re: [377:14-377:15]<br>Baker MIL 1 | **OVERRULED** |

| | | | |
|---|---|---|---|
| **379:20 - 380:3   Myers, Brian 12-12-2019**<br>379 20   Q.  Right.<br>379 21   So between 2004 and 2007, 2008, wow, is<br>379 22   that three times more valuable, your company?<br>379 23   A.  In rough math that -- that's what the<br>379 24   numbers work out to, it seems like.<br>379 25   Q.  Right.  And you all were pushing during<br>380 1   that same period of time a lot of Combat Arms<br>380 2   Version 2, right?<br>380 3   MR. NOMELLINI:  Object to form and foundation. | **Re: [379:20-380:2]**<br>Def Objection - MIL 7; Hearsay<br>(801; 802); Foundation (602);<br>401; 402; 403. | **Re: [379:21-380:2]**<br>Baker MIL 1 | **OVERRULED** |
| **380:5 - 380:7   Myers, Brian 12-12-2019**<br>380 5   A.  I think we had, if I recall, good -- good<br>380 6   sales of Combat Arms Earplugs in the '04, '05, '06<br>380 7   timeframe. | **Re: [380:5-380:7]**<br>Def Objection - MIL 7; Hearsay<br>(801; 802); Foundation (602);<br>Prejudice (403); 401; 402. | **Re: [380:5-380:7]**<br>Baker MIL 1 | **OVERRULED** |
| **381:7 - 381:12   Myers, Brian 12-12-2019**<br>381 7   Q.  I'm passing you, sir, Exhibit 35.<br>381 8   Exhibit 35, sir, is an e-mail?  It is<br>381 9   P1234.  An e-mail between yourself, a Vince<br>Donargo<br>381 10   and John Flanagan.<br>381 11   Do you see that?<br>381 12   A.  I do see that. | | **Re: [381:7-381:12]**<br>Hearsay; 3M MIL 7; Baker MIL<br>1; 403; 401 | **OVERRULED** |
| **381:19 - 382:4   Myers, Brian 12-12-2019**<br>381 19   A.  In an e-mail from August, it looks like<br>381 20   August the 26th.<br>381 21   Q.  You said Combat Arms is: "turning into<br>381 22   quite a business this year," right?<br>381 23   A.  That's how I characterized it.<br>381 24   Q.  This was an important product for Aearo,<br>381 25   wasn't it?<br>382 1   A.  You know, I -- most of the products in my<br>382 2   portfolio were important.  This was one of them, yes.<br>382 3   Q.  Well, it was quite a business, right?<br>382 4   A.  That's how I characterized it. | | **Re: [381:19-382:4]**<br>Hearsay; 3M MIL 7; Baker MIL<br>1; 403; 401 | **OVERRULED** |
| **398:19 - 399:11   Myers, Brian 12-12-2019**<br>398 19   The AO Indoor/Outdoor Safety Plug, that<br>398 20   was a separate product you all marketed and sold,<br>398 21   right?<br>398 22   A.  That was my understanding, but I think | **Re: [398:19-399:11]**<br>Plt Objection - improper counter | | **SUSTAINED** |

| | | | | |
|---|---|---|---|---|
| 398 23    that came to be known as the Combat Arms Earplug at<br>398 24    some point.<br>398 25    Q.   At early points in time, like 2000, you<br>399 1    had a separate consumer SKU, stock keeping unit, for<br>399 2    the AO Safety Indoor/Outdoor Safety Plug, right?<br>399 3    A.   Yes, that was my under -- my -- my<br>399 4    recollection.<br>399 5    Q.   From a feature perspective, it was feature<br>399 6    identical with the CAE v2 in terms of its double-ended<br>399 7    design, the filter, correct?<br>399 8    A.   It was packaged in a different manner, but<br>399 9    the plug itself was the same as the CAE v2, and -- and<br>399 10    at some point it came to be called the Combat Arms<br>399 11    Earplug, but I don't recall when that was. | | | | |
| **406:5 - 406:11   Myers, Brian 12-12-2019**<br>406 5    Q.   And so Combat Arms is accounting for more<br>406 6    than 50 percent of the increase in sales over the<br>406 7    prior year, right?<br>406 8    A.   Yeah, it appears that this is directed<br>406 9    only at our consumer business, so, but that -- those<br>406 10    are the words that -- that appear there and the math,<br>406 11    it seems like it's about right. | **Re: [406:5-406:11]**<br>Def Objection - Foundation<br>(602); Prejudice (403) | | **Re: [406:5-406:11]**<br>Baker MIL 1 | **OVERRULED** |
| **407:16 - 407:22   Myers, Brian 12-12-2019**<br>407 16    Q.   And forget about my graph, sir.  In your<br>407 17    discussion and your review of Combat Arms sales, which<br>407 18    we looked at a few minutes ago, you concluded by<br>407 19    2004 the Combat Arms had turned into a -- quite a nice<br>407 20    business, right?<br>407 21    A.   That's how I characterized it in my<br>407 22    e-mail. | **Re: [407:16-407:22]**<br>Def Objection - MIL 7; 401;<br>402; 403. | | **Re: [407:16-407:22]**<br>Baker MIL 1 | **OVERRULED** |
| **412:15 - 412:18   Myers, Brian 12-12-2019**<br>412 15    Q.   Right.  It said that it exploded in 2005,<br>412 16    more than quadrupling 2004, right? | | | | |

Myers, Brian 12-12-2019

65

| | | | | |
|---|---|---|---|---|
| 412 17    A.   It says that.  Again, I would point out it<br>412 18    was a pretty small base. | | | | |
| **415:12 - 415:14   Myers, Brian 12-12-2019**<br>415 12    Q.   And so what's happening here, sir, is in<br>415 13    2004 and 2005, you realize you've got this amazing<br>415 14    opportunity to make money from the US military,<br>right? | | | | |
| **415:18 - 415:23   Myers, Brian 12-12-2019**<br>415 18    A.   Well, I would also point out that we had<br>415 19    had feedback from some soldiers in the military<br>about<br>415 20    the success of this concept and how it had helped<br>them<br>415 21    and that's a part of why we were engaged in the<br>415 22    business as well, was to try to provide -- try to<br>415 23    provide solutions, as we said here. | Re: [415:18-415:23]<br>Plt Objection - 602, 802 | Re: [415:18-415:23]<br>Plt Objection - 602; 802<br>**OVERRULED** | Re: [415:18-415:23]<br>nonresponsive | **OVERRULED** |