# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Baker*, 7:20-cv-39 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## ORDER

This matter is before the Court on the parties' Motions for Judgment as a Matter of Law ("JMOL") under Federal Rule of Civil Procedure 50(a). Defendants move for JMOL on all of Plaintiff Lloyd Baker's claims. Baker moves for JMOL on Defendants' intermediary defenses under Washington law,[1] Defendants' superseding cause defense, and Defendants' avoidable consequence/failure to mitigate affirmative defense. Both sides submitted briefs on Defendants' intermediary defenses and oral argument on the motions was heard on June 17, 2021. Having now fully considered the parties' arguments and the applicable law, the Court concludes that Defendants' motion is due to be denied and that Baker's motion is due to be granted, in part, and denied, in part.

---

[1] Defendants pled the sophisticated intermediary doctrine as an affirmative defense in their Amended Answer to Master Long Form Complaint. *See* MDL Dkt. No. 959 at 99–100.

## I.   Legal Standard

JMOL is appropriate where a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue. *Ledbetter v. Goodyear Tire & Rubber Co., Inc*., 421 F.3d 1169, 1177 (11th Cir. 2005) (citing Fed. R. Civ. P. 50(a)). When considering such a motion, a court must "review the entire record, examining all the evidence, by whomever presented, in the light most favorable to the nonmoving party, and drawing all reasonable inferences in the nonmovant's favor." *Id*. In doing so, the court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000). A motion for JMOL should be granted "only if the facts and inferences point so overwhelmingly in favor of the [moving party] that [a] reasonable [jury] could not arrive at a contrary verdict." *Bogle v. Orange Cty. Bd. of Cty. Comm'rs*, 162 F.3d 653, 656 (11th Cir. 1998).

## II.   Discussion

### A. Defendants' Motion for JMOL

For the reasons stated on the record, the Court finds that there is a sufficient evidentiary basis for a reasonable jury to find for Baker on each of his claims. Accordingly, Defendants' motion for JMOL is **DENIED**.

**B. Baker's Motion for JMOL**

<u>1. Intermediary Defenses</u>

*i. Sophisticated Intermediary Doctrine*

Manufacturers generally owe a non-delegable duty to warn foreseeable users of known dangers inherent in their products. *See Campbell v. ITE Imperial Corp.*, 733 P.2d 969, 973 (Wash. 1987) (en banc). Most jurisdictions have carved out one or more limited exceptions to the rule, which allow a manufacturer to "discharge" its duty to warn by adequately warning a sufficiently knowledgeable or sophisticated intermediary who purchases the product and/or controls its availability to the ultimate users. *See, e.g.*, *Webb v. Special Elec. Co., Inc*., 370 P.3d 1022, 1027 (Cal. 2016) (discussing various intermediary defenses). Washington has explicitly adopted the most commonly invoked intermediary exception—the learned intermediary doctrine— which enables manufacturers of prescription drugs and medical devices to adequately inform prescribing physicians, as opposed to patients directly, of any risks associated with their drugs and devices. *See Terhune v. A.H. Robins Co.*, 577 P.2d 975, 978–79 (Wash. 1978) (en banc). Physicians serve as "learned intermediar[ies]" between drug manufacturers and patients, as patients can only obtain prescription products through their physicians, and physicians, through specialized education and experience, are generally in the best position to evaluate the potential risks and benefits of a particular

drug or medical device, and to advise their patients accordingly. *See Taylor v. Intuitive Surgical, Inc.*, 389 P.3d 517, 525 (Wash. 2017).

A small number of states—at least nine—have also adopted another variant of the intermediary exception, the so-called "sophisticated intermediary" doctrine, which enables a manufacturer to warn certain intermediate purchasers of its product of the known and knowable hazards in the product's use, and to rely on those purchasers to pass on adequate warnings to end users. *See, e.g., Webb*, 370 P.3d at 1027. Where available, the sophisticated intermediary doctrine generally has been extended in circumstances where: (1) the manufacturer lacked knowledge and/or control over how their product would be used or what the product might ultimately become; (2) the manufacturer had little ability to reasonably predict who potential end-users would be; and/or (3) the form or nature of the product—particularly raw materials and industrial products, such as chemicals, metals or sand—made it impossible or impractical for the manufacturer to provide effective warnings to end-users. *See, e.g., Webb*, 370 P.3d at 1033–38.

"Washington case law on the [sophisticated intermediary] doctrine centers almost exclusively on the pharmaceutical context." *See Jack v. Borg-Warner Morse Tec, LLC*, No. C17-0537, 2018 WL 4409800, at *27 (W.D. Wash. Sept. 17, 2018); *see also Rublee v. Carrier Corp.*, 428 P.3d 1207, 1216 (Wash. 2018) ("The only scenario in which we differentiate between types of users or consumers is in the pharmaceutical

or medical device context, where the 'learned intermediary' doctrine applies."); *Headley v. Ferro Corp.*, 630 F. Supp. 2d 1261, 1272 (W.D. Wash. 2008) ("[T]his Court cannot find[] a single Washington case adopting or applying the Sophisticated User Doctrine.").[2] Nevertheless, Defendants insist that Washington courts would apply the sophisticated intermediary defense in the instant case. The Court disagrees.

It is true, as Defendants point out, that "Washington courts have recognized a variant of the sophisticated purchaser doctrine in toxic tort claims, where a manufacturer or supplier of the products alleged to have caused the plaintiff's injuries warns the plaintiff's intermediary or employer of the products' dangerous propensities." *See Jack*, 2018 WL 4409800, at *27 (citing *Reed v. Pennwalt Corp.*, 591 P.2d 478 (Wash. Ct. App. 1979), *appeal dismissed*, 604 P.2d 614 (Wash. 1979)). But *Reed* and the other case cited by Defendants, *Lunt v. Mount Spokane Skiing Corp.*, 814 P.2d 1189 (Wash. Ct. App. 1991), are readily distinguishable because neither case applied the doctrine to an ordinary consumer product marketed and sold directly to the general public. *See Reed*, 591 P.2d at 482 (caustic soda manufacturer not required to warn employees of a food processing plant of the product's hazards where the manufacturer had warned the plaintiff's employer); *Lunt*, 814 P.2d at 1194 (ski binding

---

[2] While the *Headley* court used the term "Sophisticated User Doctrine," a close reading of the case makes clear that the court was referring instead to the sophisticated intermediary doctrine. *See Headley*, 630 F. Supp. 2d at 1272 ("Ferro's second causation argument attempts to shift the burden of warning those exposed to silica to A.O. Smith, which it contends failed miserably in this role by neglecting to properly train, supervise, and care for its employees.").

manufacturer fulfilled its duty to warn by warning ski resort because "a ski binding manufacturer who makes bindings *for rental use* . . . has limited opportunities to communicate directly with the consumer").[3] Defendants cite no authority that would support a conclusion that Washington courts would expand the bounds of the sophisticated intermediary doctrine to encompass ordinary consumer products marketed and sold directly to the general public.[4] *See Rublee*, 428 P.3d at 208 ("We have long recognized that consumer protection is the touchstone of Washington's product liability law. . . . we do not differentiate between types of users or consumers

---

[3] Indeed, the Court has not found a single case—anywhere—in which the sophisticated intermediary doctrine was applied to an ordinary consumer product marketed and sold directly to the general public, like the CAEv2. *See, e.g.*, *Webb*, 370 P.3d at 176 (crocidolite asbestos used in manufacturing Transite pipe); *Gray v. Badger Mining Corp.*, 676 N.W.2d 268 (Minn. 2004) (silica sand supplied to foundry for use in creating molds for shaping metal); *Nat. Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155 (Ind. Ct. App. 1997) (chemical odorant added to natural gas supply); *Gajewski v. Pavelo*, 670 A.2d 318 (Ct. 1996) (gas fired boiler installed by a licensed plumber); *Swan v. I.P., Inc.*, 613 So. 2d 846 (Miss. 1993) (polyurethane roofing materials installed by polyurethane roofing contractor); *Persons v. Salomon N. Am.*, 265 Cal. Rptr. 773 (Cal. Ct. App. 1990) (ski bindings supplied to shop that selected and rented skis and bindings); *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588 (Tex. 1986) (closure system for applying aluminum caps to carbonated soft drink bottles); *Jones v. Hittle Serv., Inc*., 549 P.2d 1383 (Kan. 1976) (chemical odorant added to propane gas supply); *Schmeiser v. Trus Joist Corp.*, 540 P.2d 998 (Or. 1975) (truss joists used in roof construction); *Morris v. Shell Oil Co*., 467 S.W.2d 39 (Mo. 1971) (industrial use petroleum solvents); *Parker v. Schmiede Mach. & Tool Corp*., 445 F. App'x 231 (11th Cir. 2011) (beryllium-containing products supplied to aircraft manufacturing plant); *Freeman v. United Cities Propane Gas of Ga., Inc*., 807 F. Supp. 1533 (M.D. Ga. 1992) (chemical odorant added to propane gas). In other words, if the sophisticated intermediary doctrine were made available here, it would be the first and only case in the country where the doctrine was applied to an ordinary consumer product marketed and sold directly to the general public.

[4] Perhaps the Eleventh Circuit, in its discretion, will find it appropriate to certify this question to the Washington Supreme Court. However, there being no indication in Washington jurisprudence that it would adopt the sophisticated intermediary doctrine and, in fact, undeniable indications that it would reject the doctrine, this Court will not certify the question.

for purposes of liability."); *Combs v. Int'l Ins. Co*., 354 F.3d 568, 578 (6th Cir. 2004) ("Federal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law."); *Pincus v. Am. Traffic Sols., Inc*., 986 F.3d 1305, 1310 (11th Cir. 2021) (federal courts in diversity cases must determine issues of state law in "the way it appears the state's highest court would" decide them based on relevant state law precedents).

And even in cases where an intermediary was implicated—a sophisticated intermediary purchaser of a chemical product, or a learned intermediary physician recommending a nonprescription medical product to a patient—courts have consistently refused to extend the intermediary doctrine to products available both directly to the intermediary and over-the-counter to ordinary consumers. *See, e.g*., *Hall v. Ashland Oil Co*., 625 F. Supp. 1515, 1519 (D. Conn. 1986) (benzene sold both to large industrial purchaser and ordinary consumers); *Mitchell v. VLI Corp*., 786 F. Supp. 966, 970 (M.D. Fla. 1992) (nonprescription contraceptive sponge given to patient by her physician); *Prager v. Allergan, Inc*., 1990 WL 70875 (N.D. Ill. May 2, 1990) (contact lens solution recommended by physician but available over-the-counter without prescription); *Torsiello v. Whitehall Lab'ys, Div. of Home Prods. Corp*., 398 A.2d 132 (N.J. Super. Ct. App. Div. 1979) (over-the-counter drug containing aspirin recommended by physician). Indeed, the *Lunt* court noted—without deciding—that "a different duty" may "be imposed on a manufacturer who sells products directly to

consumers." *See* 814 P.2d at 1194 n.5. Reading these authorities together, the basis for distinguishing ordinary consumer products is clear—the underlying rationale for the *intermediary* defense is lost where users could purchase and use the product *without* an *intermediary*. *See Hall*, 625 F. Supp. at 1519; *Mitchell*, 786 F. Supp. at 970 ("Considering that [plaintiff] could have obtained the [product] over-the-counter, it would be illogical to treat her differently based on the mere fortuity that she obtained a sample of the [product] from her physician."). No authority has been cited or found that would support a different conclusion. Consistent with that conclusion, the Court finds that Washington would not extend the sophisticated intermediary doctrine to a product like the CAEv2, which was marketed and sold both to the military and directly to the general public, and declines to extend the doctrine here.[5]

### ii. Bulk Supplier Doctrine

Defendants further argue that "[t]he related bulk supplier doctrine is also applicable."[6] The Court is not persuaded. "Under the bulk supplier doctrine, '[b]ulk suppliers of products to manufacturers, who are sophisticated users, have no duty in negligence, strict liability, or breach of warranty to warn ultimate purchasers of the

---

[5] It is worth noting that even within the military, the CAEv2 was but one of numerous hearing protector options approved for use by service members, who could (and, sometimes, did) obtain the CAEv2 either directly from the military or by purchasing it in a retail store.

[6] The bulk supplier doctrine is an affirmative defense. *See Little v. Liquid Air Corp.*, 952 F.2d 841, 851 (5th Cir. 1992).

manufacturer's product.' " *Kealoha v. E.I. du Pont de Nemours & Co., Inc.*, 82 F.3d 894, 901 (9th Cir. 1996). "The doctrine is a recognition of the difficulties peculiar to suppliers of raw materials and component parts, in discharging their duty to warn those ultimately exposed to the hazards posed by their products." *See* Am. L. Prod. Liab. 3d § 33:26; *see also Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 374 (1st Cir. 2009) (explaining that "products delivered in bulk are often reformulated and repackaged by an intermediary, making it unlikely that the supplier could provide a warning that would reach end users; and that bulk supplies are often put to 'multitudinous commercial uses,' making it unduly burdensome to require the supplier to warn all foreseeable end users" (citation omitted)); *Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460, 1465 (D. Nevada 1992) (explaining that "there are duties elsewhere in the law that require the intermediary [who actually manufacturers the finished product] as a manufacturer and retail marketer to safely design the product, test it, and provide its own adequate warning of any unavoidable inherent dangers" and that "[i]t would be wasteful, and at times counter-productive, for courts to require the bulk supplier to duplicate these efforts"). Courts in numerous states have adopted the doctrine and applied it to bulk suppliers of raw materials and manufacturers of non-defective component parts. *See In re Silicon Gel Breast Implants Prods. Liab. Litig.*, 887 F. Supp. 1463, 1467–68 (N.D. Ala. 1995) (collecting cases); *see also Hoffman v. Houghton Chem. Corp.*, 751 N.E.2d 848, 852 (Mass. 2001) (applying the

doctrine to bulk suppliers of chemical products); *Sara Lee Corp. v. Homasote Co.*, 719 F. Supp. 417, 419 (D. Md. 1989) (applying the doctrine to bulk suppliers of expandable polystyrene beads). The Washington Supreme Court has applied the doctrine to a bulk supplier of propane gas where the defendant supplier bought the propane from a manufacturer and sold it to a retailer "completely as a paper transaction" and therefore "never had possession or control of the propane." *See Zamora v. Mobil Corp.*, 704 P.2d 584, 586, 588 (Wash. 1985) (en banc); *see also Braaten v. Saberhagen Holdings*, 198 P.3d 493, 383 (Wash. 2008) (en banc) ("[A] 'manufacturer's duty to warn is restricted to warnings based on the characteristics of the manufacturer's own products'; '[t]he law generally does not require a manufacturer to study and analyze the products of others and warn users of the risks of those products.' " (citations omitted)).

As illustrated by these cases, the "[j]ustification for absolving a supplier from liability to ultimate users of the end-product is strongest . . . when a supplier sells to a knowledgeable manufacturer raw materials in bulk, which are not themselves inherently dangerous and which are substantially changed during the manufacturing process before resale to consumers, and when the supplier has little to no role in the design of the end product." *See In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 996 F. Supp. 1110, 1114 (N.D. Ala. 1997). In this case, Defendants, unlike the defendant propane supplier in *Zamora* and the defendant bulk suppliers in cases from other jurisdictions applying the doctrine, did not merely supply bulk raw materials or

component parts to another retailer or manufacturer. Rather, Defendants designed, manufactured, and marketed the end product at issue in this case—the CAEv2. Thus, the bulk supplier doctrine is inapplicable. *See Ramos v. Brenntag Specialties, Inc.*, 372 P.3d 200, 275 (Cal. 2016) ("[T]he protection afforded to defendants by the component parts doctrine does not apply when the product supplied has not been incorporated into a different finished or end product but instead, as here, itself allegedly causes injury when used in the manner intended by the product supplier.").

For these reasons, the Court concludes as a matter of law that neither the sophisticated intermediary doctrine nor the bulk supplier doctrine apply in this case. Accordingly, Plaintiff's motion for judgment as a matter of law on Defendants' defenses based on the sophisticated intermediary doctrine and the bulk supplier doctrine is **GRANTED**.

2. Superseding Cause

For the reasons stated on the record, the Court finds that there is a sufficient evidentiary basis for a jury to find that the Army's failure to ensure Baker's CAEv2 earplugs were properly fitted or to provide Baker with adequate instruction in proper use of the CAEv2 is a superseding cause of Baker's injuries. *See Sluman v. State*, 418 P.3d 125, 150 (Wash. Ct. App. 2018) ("Whether an intervening act constitutes a superseding cause is generally a question of fact for the jury."). Accordingly Baker's motion for JMOL on Defendants' superseding cause defense is **DENIED**.

<u>3. Avoidable Consequences/Failure to Mitigate</u>

Defendants argue that Baker has failed to avoid consequences and mitigate damages because he does not use hearing aids. Under Washington law, a jury may not base its decision to allocate a portion of damages to the plaintiff for failure to mitigate based on speculation. *See Fox v. Evans*, 111 P.3d 267, 271 (Wash. Ct. App. 2005). For this reason, "expert testimony is required to show that reasonable alternatives were available," the "expert testimony must establish that the alternative treatment would more likely than not improve or cure the plaintiff's condition," and "[t]he evidence must also allow a jury to segregate the damages." *Id.* at 270–71. The Court finds that there is not a sufficient evidentiary basis for a reasonable jury to find that Baker failed to mitigate his damages by not using a hearing aid. For one, there is no expert testimony in this case establishing that the alternative treatment at issue here—hearing aids— would "more likely than not improve or cure" Baker's condition. *See Fox*, 111 P.3d at 271; Trial Tr. (6/14/2021) at  178, 299 (Dr. Mark Packer testifying that "a hearing aid may or may not help his hearing right now" and that "I don't know that it would help him overcome some of his hearing difficulties based on the configuration of his profile"); Trial Tr. (6/16/2021) at 327 (Dr. Greg Flamme testifying that "it would be well worth looking into *the possibility* of fitting [Baker] with a hearing aid and trying that out to see how it works" and that "[h]e would be a suitable *candidate* for that" (emphasis added)). Moreover, there is no evidence that would allow the jury to

segregate the damages because there is no evidence of what a hearing aid would have cost or how much it would have mitigated Baker's injuries. Additionally, while there is evidence that hearing aids may have helped mask Baker's tinnitus, there is also evidence that a hearing aid could have exacerbated Baker's hyperacusis by painfully amplifying sound. *See* Trial Tr. (6/14/2021) at 178 (Dr. Packer testifying that "[s]omebody with significant tinnitus can be helped by hearing aids as a masking device. . . . But when you put a hearing aid on somebody with hyperacusis, that's sometimes a problem because now you have amplified sound which is painful."). Washington law does not force Baker to face a Hobson's choice between masking his tinnitus and painfully amplifying sounds. *See Hogland v. Klein*, 298 P.2d 1099, 1102 (Wash. 1956) ("A wide latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. . . . *If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complaint that one rather than the other is chosen.*" (citation omitted)). Accordingly, Baker's motion for JMOL on Defendants' avoidance of consequences/failure to mitigate affirmative defense is **GRANTED**.

**SO ORDERED**, on this 17th day of June, 2021.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**