## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Lloyd Baker*, 7:20cv039 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## ORDER[1]

Over the course of the three bellwether trials in this litigation, few pieces of evidence have been more hotly contested than the results of testing performed on the CAEv2 by Kevin Michael's laboratory, Michael & Associates, Inc.—most significantly, its reported conclusion that the NRR for the closed end of the CAEv2 equaled 23.  Before Plaintiff Lloyd Baker's trial, the Court granted Baker's motion in limine to exclude evidence or argument regarding the Michael's test reports on grounds that the reports constituted inadmissible hearsay and, in any event, the risk of unfair prejudice and juror confusion from admission of the reports substantially outweighed their probative value.  However, consistent with rulings on the matter in the prior trials, the parties were permitted to use the Michael's test reports in

---

[1] On June 18, 2021, the Court summarily imposed sanctions against Kimberly O. Branscome, Esq. and Jay L. Bhimani, Esq. based on their willful violation of court orders, for the reasons stated on the record at that time.  This Order further memorializes the Court's findings and the imposition of sanctions.  ECF No. 180 is also a part of the record for purposes of this ruling.

examining experts on the bases for the opinions about the CAEv2.  Numerous times during Baker's trial, 3M used the Michael's test reports—and, in particular, Michael's conclusion that the NRR equaled 23—for this purpose.  Each time, the Court instructed the jury: (1) that the Michael's testing and its results were inadmissible hearsay; (2) that they could not consider the testing or the results for the truth; and (3) that they could only consider those materials in evaluating whether and why an expert did or did not rely on the materials in reaching his opinions.  In other words, throughout the pretrial and trial proceedings for Baker's case, the permissible uses of the Michael's testing and its results were specifically, unambiguously, and repeatedly made clear to all parties and their counsel.

At the parties' request on the last day of Baker's trial, the Court held an attorney conference to discuss outstanding objections to demonstratives that would be used in closing arguments.  Defense counsel Kimberly O. Branscome was not present for the conference; however, Jay L. Bhimani, her co-counsel, represented that he was prepared to discuss the objections on behalf of 3M.  The key dispute involved a slide that was disclosed by 3M the night before, which prominently displayed an image of the Michael's test results along with a separate, enlarged and bolded statement that "The NRR is 23."  *See* ECF No. 180 at 3.  Baker argued that the statement, "The NRR is 23," was clearly being offered for truth.  Initially, the Court agreed that the statement looked like hearsay and that it was being used for

truth—that is, that the statement was being offered to establish that the NRR for the CAEv2 was, in fact, 23. Nevertheless, after hearing from Mr. Bhimani, the Court ruled, in no uncertain terms, that "if Ms. Branscome makes clear in her closing that this is not being offered for the truth that the NRR was 23, then I'm fine with it. If not, it's not coming in." Mr. Bhimani responded, "Understood." One minute later, the Court repeated that ruling again in the context of a discussion about another slide depicting the Michael's test results: "If Ms. Branscome makes it clear to the jury that they cannot consider the NRR of 23 for the truth, then I'm okay with the slide. If not, I'm not okay with the slide, whether it's the first slide you showed me or some other slide."

During her closing argument, Ms. Branscome violated this ruling three times, one of which also violated the Court's ruling on the related motion in limine. First, she offered the Michael's testing and its results—together with the demonstrative slide depicting the enlarged and bolded statement that "[t]he NRR for the CAEv2 was 23"—for truth.[2] Second, she did not immediately explain to the jury that they

---

[2] *See, e.g.*, Baker Trial Transcript Volume 10 at 100 ("An independent laboratory tested the Combat Arms Earplug Version 2 using the exact same method as the 015 and the 017 tests and it got an NRR of 23. The plaintiffs are saying that an NRR of 22 is fraud. That's the claim, it's fraud, that's what they're saying. And an independent laboratory got a 23."); *id*. at 100 (You saw a slide from Mr. Buchanan that the 22 has never been replicated. Those are the different ones up there actually using different test methods. But it has been replicated. It was replicated by another laboratory that you heard from Dr. Casali tests the vast majority of commercial hearing protection devices in the United States, and that's when the attacks on Kevin Michael began."); *id*. at 100-01 ("And just use your common sense. Do you think a competitor hired Michael & Associates to get a high NRR on a competitor's product?").

could not "consider the NRR of 23 for the truth."  Following these two violations, the Court waited until Ms. Branscome moved past the slide so as not to inject itself into 3M's closing argument and further disrupt the proceedings, and then called counsel to the bench.  During the bench conference, the Court admonished Ms. Branscome for talking about the NRR of 23 "in terms of the truth," and specifically and unequivocally reiterated its earlier ruling that 3M had to tell the jury that "they cannot consider the 23 for the truth."  Ms. Branscome assured the Court that she would rectify the violation.  Inexplicably, she did not do so.  Instead, she vaguely and ambiguously alluded to the Michael's "testing" as a "unique evidence category . . . called hearsay," and proceeded to give a lengthy explanation of the concept of hearsay.  At no point did Ms. Branscome mention the one statement with which the Court was concerned during the bench conference and the morning attorney conference—i.e., "The NRR is 23—which had already been the subject of multiple rulings and jury instructions, and which she had repeatedly offered for truth just moments before.  Consequently, the Court was compelled to interrupt Ms. Branscome's closing argument, yet again, to instruct the jury that while she was "absolutely correct" in her general description of hearsay, they needed to understand that they "may not consider the NRR of 23 on the Michael study for the truth."

A district court has the inherent authority and responsibility to summarily punish misconduct that it observes committed in its presence.  *Pounders v. Watson*,

521 U.S. 982, 987-90 (1997).  Summary adjudication of misconduct involving the violation of court orders during an ongoing trial is paramount to preserving the integrity of the court, ensuring the orderly and fair administration of justice, and deterring further such violations of court orders.  *See id*.; *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("Courts independently must be vested with power to impose . . . submission to their lawful mandates, and to preserve themselves and their officers from the approach and insults of pollution.").  This Court would never have imagined that a summary sanction would become necessary in litigation of this nature and magnitude, particularly given the caliber of the attorneys on both sides.  However, after defense counsel's multiple violations of the Court's explicit, unambiguous and repeated directives both before and during her closing argument, there was no other option.

Here, the Michael's laboratory's conclusion that the NRR for the closed end of the CAEv2 equaled 23 was a highly contentious and prejudicial piece of evidence. Perhaps the Court should have excluded the Michael's conclusion entirely, given the potential for misuse; but the Court decided to err on the side of liberality and of trusting counsel to adhere to the specific conditions attached to its use.  Those conditions were clear and unequivocable.  Every ruling and jury instruction on the issue, whether in a written order or issued orally from the bench and memorialized in the trial transcript, was categorically and unambiguously directed at ensuring the

jury understood it was prohibited from considering the Michael's conclusion that the NRR equaled 23 for its truth.  Moreover, both Mr. Bhimani and Ms. Branscome were explicitly instructed that if Ms. Branscome chose to use the disputed slide during her closing argument—the slide depicting an enlarged and bolded statement that "[t]he NRR for the CAEv2 was 23"—she *must* tell the jury that they could not consider that the reported NRR of 23 for the truth.  The Court's directives left no room for interpretation as to what was required.

On this record, defense counsels' conduct cannot be reasonably construed as anything other than willful.  Ms. Branscome has many years of trial experience, including serving as lead trial counsel in complex mass torts and products liability litigation.  Mr. Bhimani, too, is a seasoned trial attorney and has litigated a wide range of complex legal matters.  Both attorneys are demonstrably well-versed in the rules of evidence and trial procedure.  Both attorneys should be aware of the well-established obligation of an attorney to obey all orders of the court, even those that he or she may feel are incorrect.[3]  Mr. Bhimani was present for the morning attorney conference at which the Court ruled on the parties' dispute over the slide to be used in Ms. Branscome's closing argument.  Both attorneys had full and immediate access

---

[3] *See Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("[A]ll orders and judgments of courts must be complied with promptly.  If a person to whom a court directs an order believes that that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").

to the real-time transcript of the attorney conference, and ample opportunity to review that transcript before the undersigned returned to the courtroom. Either attorney could have sought clarification of the Court's ruling, if needed, just as they had meticulously done countless times over the preceding two weeks of trial. Neither did so. Instead, Ms. Branscome argued the Michael's NRR of 23 as a matter of fact to the jury in closing and twice failed to instruct the jury that they could not consider that evidence for its truth. There is but one reasonable inference to be drawn from those actions, given the knowledge and experience of both attorneys, their course of conduct during the trial, and the specificity and unequivocality of the Court's rulings—counsels' actions were willful.

And there was but one appropriate sanction—summary disposition. Unless the Court took a significant, essentially immediate step to deter counsels' willful disregard of its evidentiary and demonstrative rulings, this extraordinarily complicated trial, and the broader multidistrict litigation, risked becoming unmanageable. Any number of the multitude of attorneys involved in this litigation, including Ms. Branscome and Mr. Bhimani, may feel free to defy the Court, based solely on a distorted and thinly veiled misconstruction of the Court's specific and unambiguous directives. Summary sanctions were necessary to preserve the orderly and fair administration of justice in the courtroom, protect the integrity and authority of the Court, and deter future violations of court orders.

Accordingly, consistent with the Court's summary disposition of defense counsel's willful violation of court orders on June 18, 2021, and for the reasons stated on the record at that time and in the body of this Order, sanctions in the amount of $10,000 are imposed against Kimberly O. Branscome, Esq., and sanctions in the amount of $2,000 are imposed against Jay L. Bhimani, Esq.  The payments must be deposited into the registry of the Court by July 19, 2021.

**SO ORDERED**, on this 22nd day of June, 2021.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**